UNITED LEASING CORPORATION v. RANDALL C. MILLER AND POWE, PORTER, ALPHIN & WHICHARD, P.A.

No. 8114SC1349

(Filed 21 December 1982)

**1. Rules of Civil Procedure § 15.1— denial of motion to amend complaint—undue delay—no abuse of discretion**

In an action for attorney malpractice brought by a third party not in privity with defendant, the trial court did not abuse its discretion by denying plaintiff's motion to amend its complaint to include a second claim for relief in contract based upon a third party beneficiary theory. Plaintiff did not file its proposed amendment until some seven months after a previous opinion by the appeals court was filed, over five years after the complaint was filed and six years after the events in question. G.S. 1A-1, Rule 15(a).

**2. Attorneys at Law § 5.1— negligence of attorney in title search—contributory negligence of plaintiff—involuntary dismissal against plaintiff proper**

In an action in which plaintiff alleged negligence on the part of defendant attorney in failing to discover a lien on properties held by plaintiff as collateral for a loan with defendant's client, plaintiff's lessee, the trial court did not err in entering an involuntary dismissal pursuant to G.S. 1A-1, Rule 41(b) against the plaintiff on the grounds of contributory negligence. Plaintiff had notice of the first deed of trust in favor of a bank prior to closing the loan and failed to either pursue the discrepancies between the title search provided by defendants and a letter from its lessee's accountant or to inquire of defendants about the possibility of a deed of trust on the property having been overlooked in defendants' title search, despite the opportunity having presented itself by their continued communication about the transaction prior to closing. Plaintiff was not entitled to rely solely on defendants' title rundown letter for information regarding liens on the disputed property as it had constructive notice of the deed of trust.

APPEAL by plaintiff from *Herring, Judge.* Judgment entered 29 May 1981 in Superior Court, DURHAM County. Heard in the Court of Appeals 22 September 1982.

This is an action for attorney malpractice brought by a third party not in privity with defendant. Plaintiff, United Leasing Corporation ("ULC"), is a lessor of equipment. Defendant, Randall C. Miller, a lawyer, and the law firm by which he was employed, Powe, Porter, Alphin & Whichard, P.A., were hired by plaintiff's proposed lessee, Burlington Motor Hotel Owners ("Hotel Owners") to conduct, among other things, a title examination on the properties which were to serve as collateral for plaintiff's leasing agreement with Hotel Owners. Defendant furnished plaintiff a "title

rundown" letter which failed to disclose the existence of a deed of trust in favor of North Carolina National Bank ("NCNB") on one of the collateral properties. Subsequently, the lease went into default and plaintiff was unable to obtain full satisfaction against the collateral.

Plaintiff initiated this action against defendant Miller and his law firm by filing a complaint on 24 July 1975, alleging that defendant negligently failed to discover the existence of a lien. Plaintiff sought to recover actual damages in the amount of $65,000, representing approximately the value of the undisclosed lien, and special damages in the amount of $364,698.44, representing the value of the total original security obligation. Defendant filed an answer raising several defenses and a motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(6). After a hearing on 17 January 1979, Judge Herring granted the defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. At that time plaintiff gave notice of appeal. The following day plaintiff unsuccessfully sought to have the dismissal set aside and to amend its pleadings on a third party beneficiary theory. The plaintiff then appealed the dismissal of its action to this Court.

In an opinion filed 4 March 1980, the trial court's dismissal of plaintiff's claim was reversed and remanded. This Court ruled that while the complaint did state a claim in tort for negligence arising from the breach of a common law duty of care flowing from the parties' non-contractual working relationship, it nevertheless failed to state a claim in contract on a third party beneficiary theory. In concluding, this Court stated: "Our holding does not preclude . . . the plaintiff from renewing its motion to amend." *United Leasing Corp. v. Miller*, 45 N.C. App. 400, 408, 263 S.E. 2d 313, 319 (1980). (*"United Leasing" I*)

Seven months later on 17 October 1980, plaintiff filed a motion for leave to amend its complaint and include an alternative claim for relief on the theory that plaintiff was an intended third party beneficiary of the contract between Hotel Owners and defendants. The gravamen of plaintiff's proposed amendment is defendants' negligent performance of their title search; the defendants' duty to plaintiff flowing from the contractual relationship of third party beneficiary. Plaintiff's motion to amend was denied by Judge Brewer in an order filed 4 December 1980.

Thereafter, the case was tried before Judge Herring, sitting without a jury, solely on a tort theory of negligence. The trial court concluded that plaintiff had failed to show that it is entitled to any relief and granted defendants' motion for involuntary dismissal pursuant to G.S. 1A-1, Rules 41(b) and 52(a). Specifically, the court concluded that notwithstanding the negligence of the defendants, the plaintiff's own negligence was a proximate cause of its injury and therefore, the doctrine of contributory negligence barred recovery by plaintiff. From a judgment dismissing the plaintiff's complaint with prejudice, the plaintiff appeals.

*Frederick J. Sternberg, for the plaintiff appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Michael E. Weddington, for defendant appellee.*

JOHNSON, Judge.

Plaintiff presents four questions for review: (1) whether plaintiff's motion for leave to amend its complaint should have been allowed, (2) whether the court erred in excluding certain testimony, (3) whether the court erred in entering an involuntary dismissal, and (4) whether the court erred in refusing to reopen the case to receive documentary evidence after plaintiff had rested.

In passing upon plaintiff's arguments in this opinion, we take judicial notice of our own record in *United Leasing I.* 1 Brandis, N.C. Evidence § 13 (2d Rev. Ed. 1982).

I

[1] Plaintiff contends that the court erred in denying its motion to amend the complaint to include a second claim for relief in contract based upon a third party beneficiary theory. It is well established that a motion under G.S. 1A-1, Rule 15(a) for leave of court to amend a pleading is addressed to the sound discretion of the trial judge and the denial of such motion is not reviewable absent a clear showing of an abuse of discretion. *Kinnard v. Mecklenburg Fair*, 46 N.C. App. 725, 266 S.E. 2d 14 (1980); *Hudspeth v. Bunzey*, 35 N.C. App. 231, 241 S.E. 2d 119 (1978). The trial court stated no reason for the denial of plaintiff's motion. In the absence of any declared reason for the denial of leave to

amend, this Court may examine any apparent reasons for such denial. *Kinnard v. Mecklenburg Fair, supra.*

Rule 15(a) of the North Carolina Rules of Civil Procedure is virtually identical to its federal counterpart. *Public Relations, Inc. v. Enterprises, Inc.*, 36 N.C. App. 673, 245 S.E. 2d 782 (1978). Rule 15(a) states that "leave shall be freely given when justice so requires." In interpreting the federal rule counterpart, the United States Supreme Court held that the trial judge abuses his discretion when he refuses to allow an amendment unless a justifying reason is shown. The court set forth certain areas of possible justification for denying amendments: (a) undue delay, (b) bad faith or dilatory tactics, (c) undue prejudice, (d) futility of amendment, and (e) repeated failure to cure defects by previous amendments. *Foman v. Davis*, 371 U.S. 178, 9 L.Ed. 2d 222, 83 S.Ct. 227 (1962).

The plaintiff's motion for leave to amend was not timely. In its brief plaintiff concedes that its amendment is not offered on the basis of newly discovered facts or upon any other facts not known to plaintiff in 1975, when the complaint was filed. Rather, plaintiff argues that there was no law in North Carolina as to whether claims for relief from attorney malpractice were actions sounding in tort or contract until the ruling in *Insurance Company v. Holt*, 36 N.C. App. 284, 244 S.E. 2d 177 (1978) established that such actions sound in contract; therefore, plaintiff was justified in electing to proceed with a tort theory. Furthermore, plaintiff contends that prior to this Court's 1980 ruling in *United Leasing I* recognizing the doctrine of third party beneficiary in attorney malpractice suits, it would have been a "vain thing" for plaintiff to include such a claim for relief in its complaint.

The record discloses that on the day following the 17 January 1979 dismissal of its action plaintiff filed a motion for relief from the dismissal pursuant to Rule 60(b)(6) of the North Carolina Rules of Civil Procedure. The motion states, *inter alia*, the following reason for plaintiff's entitlement to relief:

> (10)(c) That the complaint of the plaintiff shows an affirmative duty on the part of the defendants whose certified title directly to the plaintiff *under doctrines of either privity or third party beneficiary sufficiently to sustain the complaint.* (Emphasis added.)

Apparently plaintiff did not consider pleading a third party beneficiary claim to be a vain endeavor when filing its 1979 motion for relief. While plaintiff was precluded from filing its amendment to the complaint after giving notice of appeal from the order of dismissal, no justification is given for plaintiff's failure to plead its contract claim either (1) in its original complaint; (2) after *Insurance Co. v. Holt, supra* was filed 16 May 1978 and prior to the 1979 hearing on defendants' Rule 12(b)(6) motion; or (3) immediately following the filing of this Court's opinion in *United Leasing I.* That opinion states:

> To establish a claim based on the third party beneficiary contract doctrine, a complainant's allegations must show: (1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental benefit.

45 N.C. App. at 406, 263 S.E. 2d at 317. However, plaintiff did not file its proposed amendment until 17 October 1980, some seven months after the opinion was filed, over five years after the complaint was filed and six years after the events in question. As the material facts were clearly known to plaintiff from the outset, plaintiff's delay was entirely undue. Plaintiff has not carried its burden of proving that the trial court abused its discretion in denying plaintiff's motion to amend.

## II

[2]   The major issue in this appeal is whether the plaintiff's own contributory negligence precludes any recovery for losses sustained as a result of plaintiff's leasing agreement with Hotel Owners. For reasons set forth herein, we find no error in the entry of an involuntary dismissal against the plaintiff on the grounds of contributory negligence.

## A

At the close of plaintiff's evidence, defendants moved for dismissal pursuant to G.S. 1A-1, Rule 41(b). The pertinent portion of Rule 41(b) provides:

> "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the de-

fendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a)."

Under Rule 41(b) the judge, as trier of the facts, may weigh the evidence, find the facts against plaintiff and sustain defendant's motion at the conclusion of his evidence even though plaintiff has made out a prima facie case which would have precluded a directed verdict for defendant in a jury trial. *Helms v. Rea*, 282 N.C. 610, 194 S.E. 2d 1 (1973).

The Supreme Court recently clarified the standard which the trial judge must apply in testing the sufficiency of the evidence under Rule 41(b) in *Dealers Specialties, Inc. v. Neighborhood Housing Services, Inc.*, 305 N.C. 633, 291 S.E. 2d 137 (1982). The Court noted that previously two different standards had been applied to Rule 41(b) motions; (1) that the judge is to evaluate the evidence without any limitations as to the inferences which the court must indulge in favor of the plaintiff's evidence on a similar motion for a directed verdict in a jury case, *Bryant v. Kelly*, 10 N.C. App. 208, 213, 178 S.E. 2d 113, 116 (1970), *rev'd on other grounds*, 279 N.C. 123, 181 S.E. 2d 438 (1971), and (2) that the evidence must be viewed in the light most favorable to the plaintiff, *Sanders v. Walker*, 39 N.C. App. 355, 250 S.E. 2d 84 (1979). The Court stated that the correct rule was set forth in *Bryant v. Kelly;* the judge is not obliged to consider plaintiff's evidence in a light most favorable to plaintiff. 305 N.C. at 639, 291 S.E. 2d at 140.

When the motion to dismiss is allowed, the trial judge must determine the facts and render judgment against the plaintiff. The trial judge's findings are conclusive on appeal if supported by any competent evidence even though there may be evidence to support findings to the contrary. *Bryant v. Kelly, supra; Gibbs v. Heavlin*, 22 N.C. App. 482, 206 S.E. 2d 814 (1974).

In the case under discussion the trial judge made the following findings of fact relative to plaintiff's acts of negligence:

9. On or prior to May 21, 1974 plaintiff's officer, Mr. Tennent, received from Charles McMillan, in response to the requirement of the commitment letter, a letter dated May 10, 1974 concerning first mortgage balances on Alamance County real estate owned by him and Houston P. Sharpe. This letter indicated an outstanding first mortgage existed on Mr. Sharpe's approximately 7.8 acre tract in favor of North Carolina National Bank.

10. The receipt by Mr. Tennent of Mr. McMillan's May 10, 1974 letter incited inquiry on the part of Mr. Tennent with respect to the existence of a first mortgage in favor of North Carolina National Bank on the approximately 7.8 acre Sharpe property. Mr. Tennent made, or attempted to make, inquiry of both Mr. McMillan and Mr. Sharpe concerning this mortgage, but did not get any response that resolved the questions raised concerning this mortgage. Mr. Tennent did not make any inquiry of defendants concerning this matter.

A third finding of fact may have buttressed the court's conclusion of negligence.

6. It was plaintiff's requirement that in collateralizing the lease transaction with Burlington Motor Hotel Owners via the deeds of trust on real estate of the partners, the plaintiff obtained an equity position of at least $400,000; however, defendants were never made aware of any particular equity position that plaintiff desired to attain.

The plaintiff's failure to resolve the questions raised concerning the existence of an encumbrance in favor of NCNB prior to closing, was found to be a proximate cause of harm to the plaintiff. These findings are deemed conclusive on appeal if supported by competent evidence even though there may be evidence to support findings to the contrary. *Bryant v. Kelly, supra; Gibbs v. Heavlin, supra.* The record in this case amply supports the conclusion that plaintiff was contributorily negligent.

B

The key factual issue in this appeal is whether the documents before Mr. Tennent gave notice of the existence of the second lien

on the Sharpe property, which was not disclosed by defendants' title search. The evidence presented at trial shows that following some preliminary negotiations between William W. Tennent, III, Vice President/Regional Manager of plaintiff corporation and certain partners of Hotel Owners, Tennent drew up a handwritten checklist of plaintiff's requirements for the transaction. The list was incorporated, in a somewhat altered form, in a commitment letter dated 1 May 1974, which plaintiff delivered to Hotel Owners. By its commitment letter, plaintiff agreed to provide lease financing for the Hotel Owners' new project, subject to the furnishing of certain documents and compliance with certain conditions set forth therein. Conditions (7) and (8) were:

> 7. Deeds of Trust, appraisals, and title rundown letters on the following property reflecting approximately the equity shown in financial statements as well as valid 2nd lien.
>
> . . . Houston Sharpe — building, Graham, North Carolina, Highway 85; 100 (sic) acres land, Graham, North Carolina . . .
>
> 8. Names, addresses, and exact amount owing on 1st Deeds on above properties will be supplied us.

The Hotel Owners partnership was to have its attorney examine the title to the property occupied by the motel and each of the collateral properties listed in condition (7), render title opinions, prepare deeds of trust and perform certain other specified services.

The information listed in condition (8) was to be supplied to plaintiff by the partners themselves to substantiate information already obtained by Tennent. Prior to the delivery of the commitment letter, the Hotel Owners partners had provided personal financial statements to Mr. Tennent. These reflected a certain total equity position (excess of property values over current encumbrances thereon) of the partners in the properties listed in condition (7) of the commitment letter. The financial statement forms were supplied by plaintiff; however, at the time of trial they were no longer in plaintiff's files. Tennent testified that the forms called for the value of the real estate as well as the mortgage, mortgage balance and mortgage holder; but that he could not remember whether the NCNB mortgage was listed on Mr. Sharpe's financial statement. The balances due on the first mort-

gages were needed to compute plaintiff's equity position. Mr. Tennent testified that the "primary thing" for plaintiff was attaining an equity position of approximately $400,000 in the lease transaction by the second liens sought to be attached to the collateral properties. Although it was the equity position and not the particular status of first or second lien that mattered, Tennent admitted that at no time was the equity level sought communicated by plaintiff to defendants.

Hotel Owners employed defendants to assist them with their obligations under the commitment letter. Charles McMillan, a partner of Hotel Owners, contacted defendant Miller by telephone. During this conversation McMillan had before him Tennent's handwritten checklist. The document was later furnished to Miller by McMillan. Miller testified that among other services, he undertook to perform "item number twelve (b) as it relates to a letter on each property stating it's a valid second lien and that it's properly recorded." This item roughly parallels condition (7) of the commitment letter. The task defendants specifically undertook is written as follows:

> 12(b) Title search and letter on each property stating it is a valid second lien and that we are properly recorded. Attorney must be qualified R/E man.

Defendant undertook no responsibilities for determining or acquiring the appraisal values or first lien current balances due with respect to the collateral properties. These tasks are listed as items twelve (c) and (d) on Tennent's checklist.

> (12)(c) Appraisal on each property in simple letter form from a qualified appraiser. Appraisal shall be satisfactory to ULC and reflect appx. value or mor . . . as listed on financial statements.

> (12)(d) The names of 1st mortgage holders and account numbers will be supplied along with evidence (Amortization Schedule or letter) of balance on 1st loan.

Item 12(d) roughly parallels condition (8) of the commitment letter.

As to the information listed in item 12(d), Miller testified that he and Mr. McMillan determined that "because of the problems of

going through banks when you had no particular privity, it would require some letter to get access to that, that the partners, themselves would obtain that information as to their individual loans." Mr. Miller further testified that as Mr. Sharpe was not available at that time to provide his own information, McMillan, who was Sharpe's business partner and public accountant, undertook to get the payoff balances on Sharpe's obligations. Mr. Tennent testified that Mr. Sharpe was unavailable because "he was incarcerated in the federal penitentiary."

The following picture emerges from the documents and witnesses' testimony: (1) the plaintiff had some equity position information on the collateral properties from the Hotel Owners partners themselves; (2) plaintiff nonetheless wanted verification of that information from outside sources, and items (12)(b)-(d) reflect three separate sources of verification for the information—a title search, a real estate appraisal, and possibly a bank or financial institution letter regarding first mortgage payoff balances; (3) the purpose of defendants' item (12)(b) "title rundown" letter was to inform plaintiff as to what liens were against the property, thus substantiating the information already provided by the Hotel Owners, and to verify that once properly recorded, plaintiff's deeds of trusts would be valid second liens; and (4) verification of the equity shown in the financial statements would be made by plaintiff subtracting the item 12(d) balances due on first mortgage from the item (12)(c) appraised values of the property. Defendants were not looked to for the first mortgage payoff balances.

Defendants then examined the public records of Alamance County and reported their findings to plaintiff in a letter dated 9 May 1974. Deeds of trust were attached, and the letter stated that when the deeds were properly recorded, they would be valid second liens on the property subject only to the matters disclosed therein. Defendants neither discovered nor reported the existence of a first deed of trust in favor of NCNB on a 9.97 acre tract of land owned by Houston P. Sharpe. With respect to the Sharpe property, defendant's title examination letter disclosed only a deed of trust in favor of First Federal and described the subject tract as follows:

This Deed of Trust covers a 400 foot deep tract of the subject premises fronting on Maple Street and is described as a 2.136 acre tract.

Attached to the title rundown letter is "Exhibit E—2.136 Acre Tract," which refers to the Sharpe property and indicates that the 2.136 acre tract is "a *portion* of a 9.97 acre tract." (Emphasis added.)

Plaintiff's officer, Tennent, admitted that as a result of defendants' services, "so far as I know, we got a valid second lien on the property before closing." Tennent received two other documents relevant to our inquiry prior to the closing of the transaction on 24 May 1974. The first, a letter dated 10 May 1974 from Mr. McMillan, listed the outstanding first mortgage balances on properties owned by McMillan and Sharpe.[1] Tennent believes he received this letter on or about 21 May 1974. The McMillan letter lists the following first mortgage balances due for the Sharpe property as called for in the plaintiff's checklist and commitment letter:

3. Houston P. Sharpe—Building, 426 South
        Maple Street, Graham, N.C.
    Loan #111011522 First Federal Savings
        and Loan, Burlington, N.C.
    Balance May 10, 1974—$169,061.79

4. Houston P. Sharpe—7 1/2 acres land
        426 South Maple Street, Graham, N.C.
    Loan #00018 North Carolina National
        Bank
    Balance May 10, 1974—$30,468.75

The second document is an appraisal letter dated 10 May 1974 sent by J. Richard Dodson to plaintiff. The letter gives a description and market values for each of the collateral properties. The Sharpe property is described as follows:

---

1. Although Mr. McMillan's letter was not introduced into evidence, the letter was used during the cross-examination of plaintiff's officer, William Tennent. The letter also formed the basis of the trial court's findings of fact regarding the plaintiff's contributory negligence. Therefore, we deem it appropriate to take judicial notice of the letter's contents as they appear in our own record of *United Leasing I.*

> 4. An industrial plant located at 426 S. Maple Street . . . The building contains a total area of 30,000 S.F. . . . The land is approximately 10 acres with 478 feet on S. Maple Street . . . .

A separate column listed the total market values for each property. Mr. Tennent subtracted $169,000 from the $370,000 Sharpe total to compute plaintiff's expected second lien equity position. According to his calculations, the appraisal letter verified the equities as shown in the previously received financial statements of the Hotel Owners partners.[2] Thus, by 21 May 1974 plaintiff had received the desired information from the three sources listed in checklist items (12)(b)-(d).

A comparison of the 9 May 1974 title letter from defendant Miller and the 10 May 1974 balances due letter from McMillan raised a question in Tennent's mind whether the Sharpe tract involved split acreage, and was therefore subject to the two first deeds of trust reported by McMillan. On the one hand, the Miller letter reported a 9.97 acre tract subject only to a deed of trust covering a *400 foot deep tract* of the premises, *fronting on Maple Street,* described as a *2.136 acre tract,* in favor of First Federal. On the other hand, the McMillan letter reported the First Federal deed of trust as covering a *building at 426 South Maple Street* with a balance due of approximately $169,000 and a deed of trust in favor of NCNB on *7 1/2 acres of land at 426 South Maple Street* with a balance due of approximately $30,000.

In addition, the appraisal letter referred to the Sharpe property as an industrial plant located at 426 S. Maple Street and approximately 10 acres of land, with 478 feet on S. Maple Street. This description reflects Tennent's own previous description as shown in his handwritten checklist and 1 May commitment letter—a building and 10 acres of land. Mr. Tennent knew that the total acreage involved on the Sharpe tract did not exceed 10 acres. All of the descriptions of the Sharpe property in Tennent's possession together give a picture of a 9.97 acre tract with an industrial plant, fronting on S. Maple Street, covering approximate-

2. It is unclear to this Court how the calculations which omitted the NCNB balance due could verify the financial statement of Mr. Sharpe unless Sharpe's financial statement also omitted the NCNB information.

ly 2.136 acres and a remaining portion of approximately 7 1/2 acres.

The only discrepancy went to the existence of the NCNB deed of trust on the approximately 7 1/2 acres which were not covered by the 2.136 acre deed of trust in favor of First Federal. Mr. Sharpe, however, was "impossible" to contact. Mr. Tennent attempted unsuccessfully to contact McMillan, Sharpe's accountant. Mr. Tennent did not attempt to discuss the question of a lien discrepancy with defendant Miller despite the fact that he had intended to rely upon defendants' title search to tell him what liens existed against the collateral properties. Tennent testified, "I made the judgment that the lien involved only the hundred and sixty-nine thousand dollars." In other words, although the discrepancy was unresolved, it was Tennent's decision to disregard the information provided by Sharpe's partner and accountant as to the existence of the NCNB lien and rely solely upon the appraisal and defendants' title letter to determine plaintiff's equity position. Mr. Tennent admitted that he was anxious to get the transaction done as "time was of the essence" due to plaintiff's fiscal year ending 31 May 1974. Within a few days after receipt of the McMillan letter, Tennent authorized Miller to close the leasing agreement. A letter dated 27 May 1974 sent from Mr. Miller to Mr. Tennent reflects the fact that Miller received further instructions regarding the closing from Tennent in telephone conversations on 22 and 23 May 1974, one or two days after receipt of the McMillan letter. Yet, at no time did Tennent inquire of Miller about the possibility of a deed of trust on the Sharpe property having been overlooked in Miller's title search, despite the opportunity presented by their continued communication about the transaction.

## C

The trial court found plaintiff's failure to resolve the questions raised concerning the existence of an encumbrance in favor of NCNB on the Sharpe property to be a proximate cause of harm to the plaintiff. This finding is amply supported by the record and conclusive on appeal.

Plaintiff argues that it was entitled to rely solely upon defendant's title rundown letter for information regarding liens on

the Sharpe property and should not be charged with notice of the NCNB deed of trust under the facts of this case. We do not agree.

The case of *Perkins v. Langdon,* 237 N.C. 159, 74 S.E. 2d 634 (1953) is instructive on the issue of constructive notice. The court there stated:

> ordinarily where a party has information which is reasonably calculated to excite attention and stimulate inquiry, he is charged with constructive notice of all that reasonable inquiry would have disclosed, the theory being that knowledge which one has or ought to have under the circumstances is in legal contemplation imputed to him. (Citations omitted.)
>
> But to charge one with notice, the activating information known to the party sought to be charged must ordinarily be such as may reasonably be said to excite inquiry respecting the particular fact or facts necessary to be disclosed in order to fix the party charged with notice. (Citations omitted.)
>
> Also implicit in the principles that underlie the doctrine of constructive notice is that concept that before one is affected with notice of whatever reasonable inquiry would disclose, the circumstances must be such as to impose on the person sought to be charged a duty to make inquiry. (Citations omitted.)

237 N.C. at 167-68, 74 S.E. 2d at 641-42.

Applying these principles to the actions of Mr. Tennent regarding NCNB deed of trust information received from McMillan, it is apparent that this "activating information" did "excite inquiry" on the part of Mr. Tennent. He took some action to inquire as to the correctness of that information in seeking to contact Mr. McMillan. The circumstances of receipt of this information were such to impose on Mr. Tennent a duty to make a reasonable inquiry. Tennent was on the eve of closing a $350,000 lease transaction in which he desired to attain a $400,000 equity position and received information which, if correct, would adversely affect that equity position. Finally, Mr. Tennent failed to make a *reasonable* inquiry because he did not inquire of defendants, the title attorneys involved, with respect to the apparent conflict in first mortgage information regarding the

Sharpe property. Therefore, plaintiff is chargeable with notice of the NCNB deed of trust on the Sharpe property.

The key factual point in the determination of contributory negligence in the present action is that plaintiff received notice prior to closing its lease transaction with Hotel Owners, of the likely existence of the NCNB deed of trust against the Houston P. Sharpe property. While no single description of the Sharpe property before Mr. Tennent precisely mirrored any other, the failure to resolve the question that arose in his mind regarding the NCNB deed of trust, and Tennent's decision to compute his equity position, the key figure in the transaction, without taking into account the reported $30,468.75 balance due was unmistakably a proximate cause of plaintiff's subsequent failure to obtain the satisfaction it expected from the collateral properties once the lease went into default.

The trial judge, in evaluating the sufficiency of plaintiff's evidence, was entitled to view the failure of Mr. Tennent to resolve the question regarding the NCNB deed of trust by undertaking a reasonable inquiry prior to closing the transaction as negligence on Tennent's part imputable to his employer, the plaintiff, without regard to whether there is other evidence which might sustain contrary findings. *Bryant v. Kelly, supra; Gibbs v. Heavlin, supra.* The record shows that plaintiff was contributorily negligent and the court did not err in granting the involuntary dismissal.

In view of our conclusion on the issue on plaintiff's contributory negligence, we need not address the other questions presented.

Affirmed.

Chief Judge MORRIS and Judge BECTON concur.