BOBBY CHARLES PATRICK AND WIFE, OMIE PATRICK, PLAINTIFFS v. RONALD WILLIAMS, PROFESSIONAL ASSOCIATION AND RONALD C. WILLIAMS, INDIVIDUALLY, DEFENDANTS

No. 9026SC350

(Filed 2 April 1991)

1. **Rules of Civil Procedure § 15 (NCI3d)— motion to amend— undue delay in filing—undue prejudice to opposing party**

   The trial court did not err in denying defendants' motion to amend their answer where defendants filed the motion almost a full year after filing the answer and after both parties had conducted extensive discovery; if the trial court had allowed the amendment, plaintiffs would have been required to produce evidence of an automobile driver's negligence approximately five years after the accident giving rise to the claims here; thus the trial court's ruling was justified at least on grounds of defendants' undue delay and undue prejudice to plaintiffs; by their motion defendants sought to deny one of plaintiffs' crucial allegations which the original answer had admitted; and the withdrawal of a judicial admission is not favored.

   **Am Jur 2d, Pleading §§ 309, 310.**

2. **Rules of Civil Procedure § 56.3 (NCI3d)— negligence of driver— admission in answer—summary judgment on negligence question proper**

   In an action for legal malpractice arising from defendants' representation of plaintiffs in a negligence action which in turn arose from an automobile accident, there was no merit to defendants' contention that the trial court erred in allowing plaintiffs' motion for partial summary judgment on the issue of negligence of the automobile driver, since defendants' answer specifically admitted allegations in plaintiffs' complaint with regard to the driver's negligence.

   **Am Jur 2d, Pleading § 179; Summary Judgment §§ 6, 32, 41.**

3. **Attorneys at Law § 45 (NCI4th)— malpractice—successive failures of attorney to take action—summary judgment for client proper**

   The trial court properly entered summary judgment for plaintiffs on the issue of defendants' legal malpractice where the forecast of uncontroverted evidence was that defendant

PATRICK v. WILLIAMS

[102 N.C. App. 355 (1991)]

attorney failed to estimate the value of plaintiffs' claim against a negligent automobile driver, failed to make an independent evaluation of the driver's assets, failed to consult plaintiffs about the driver's offer of judgment and to inform them of the entry of judgment pursuant to Rule 68 until more than six months had passed, and failed to appeal the trial court's order which terminated plaintiffs' claims to underinsured motorist coverage, since these successive failures constituted an omission of reasonable care and diligence which proximately caused damage to plaintiffs, his clients.

   **Am Jur 2d, Attorneys at Law §§ 199, 202, 206; Summary Judgment § 26.**

4. **Rules of Civil Procedure § 56.1 (NCI3d)— malpractice—issue argued but not pleaded—waiver of notice requirement—failure of court to rule on issue—error**

   In a legal malpractice action arising from defendants' representation of plaintiff in a negligence action which in turn arose from an automobile accident, the trial court erred in declining to decide whether the amount of underinsured motorist coverage otherwise available should be reduced by any amounts paid to or for the benefit of plaintiff pursuant to the Workers' Compensation Act, although neither plaintiffs' nor defendants' motion for partial summary judgment gave notice of this issue, where plaintiffs waived the notice requirement by failing to object or move for additional time on this issue; plaintiffs admitted that the policy providing for underinsured motorist coverage also provided for reduction in that coverage by the amount of workers' compensation benefits paid to a party; and plaintiffs themselves moved for partial summary judgment with regard to the amount of underinsurance coverage available to them.

   **Am Jur 2d, Automobile Insurance §§ 316, 320; Summary Judgment §§ 14, 30.**

5. **Attorneys at Law § 49 (NCI4th)— malpractice—punitive damages—court's refusal to submit to jury—error**

   In an action for legal malpractice, plaintiffs' forecast of evidence was sufficient to support submission of an issue as to punitive damages based on gross negligence where it tended to show that defendants failed to determine the assets of the

PATRICK v. WILLIAMS

[102 N.C. App. 355 (1991)]

original alleged tortfeasor, failed to estimate the value of plaintiffs' claim, accepted a binding settlement offer without consulting plaintiffs, did not perfect an appeal of the trial court's denial of their motion to set aside the judgment reflecting the settlement, and failed to disclose the entry of judgment for more than six months, which prohibited plaintiffs from being able to make a claim for available underinsured motorist insurance.

**Am Jur 2d, Attorneys at Law § 226.**

**Allowance of punitive damages in action against attorney for malpractice. 13 ALR4th 95.**

APPEAL by plaintiffs and defendants from judgment of *Judge Chase Saunders* entered 19 January 1990 out of court and out of session in MECKLENBURG County Superior Court. Heard in the Court of Appeals 24 October 1990.

*Charles M. Welling for plaintiff appellants-appellees.*

*Hedrick, Eatman, Gardner & Kincheloe, by Mel J. Garofalo, for defendant appellants-appellees.*

COZORT, Judge.

Seeking compensatory and punitive damages, plaintiffs sued defendants for legal malpractice. We affirm in part and reverse in part the trial court's Order of 19 January 1990 disposing of various motions and granting partial summary judgment to plaintiffs and defendants.

The case below has its origin in an automobile accident. On 5 December 1984 Bobby Charles Patrick (Patrick), while driving a truck owned by his employer, was involved in a collision with a truck driven by James H. Greene (Greene). As a result of Patrick's injuries, his damages exceed $63,000 for medical expenses, treatment, and lost wages.

In January 1985, plaintiffs (Patrick and his wife) employed defendant herein, Ronald Williams (Williams), to represent them in "all matters and things arising out of or connected with" the accident of 5 December 1984. In July 1986, Williams, on behalf of the Patricks, filed an action alleging that Greene's negligence caused the accident and seeking recovery for damages including

loss of consortium. The action joined the following parties as defendants in a declaratory judgment claim to determine Bobby Patrick's rights, if any, under applicable policies of the defendants: Iowa National Mutual Insurance Company (Iowa National), Bobby Patrick's liability insurance carrier; Michigan Mutual Insurance Company (Michigan Mutual), the liability insurance carrier of Patrick's employer; and State Farm Mutual Insurance Company (State Farm), Greene's liability insurance carrier. Iowa National became insolvent, and the North Carolina Insurance Guaranty Association (North Carolina Guaranty) was substituted in its place. North Carolina Guaranty, Michigan Mutual, and Greene filed answers to the complaint.

In December 1986, Greene's attorney sent to Williams an offer of judgment pursuant to Rule 68 of the North Carolina Rules of Civil Procedure. Although the text of that offer (in the amount of $25,000) is not included in the Record, Williams responded to the offer by sending a letter, dated 15 December 1986, to the attorneys for North Carolina Guaranty and Michigan Mutual. Williams' letter read as follows:

Pursuant to North Carolina General Statutes 20-279.21(b)(4) please accept this letter as written notice in advance of settlement between the underinsured motorist, Jimmy Harris Greene, and Bobby Charles Patrick. By copy of this letter we are notifying Mr. Greene's attorney that we accept the Offer of Judgment.

The record indicates that on 19 December 1986 Greene's attorney filed an affidavit, with attached copies of his offer and of Patrick's letter quoted above, to prove service and acceptance of the offer of judgment. The record also indicates that, on the same day, the clerk, in accordance with Rule 68, entered judgment for the plaintiffs against Greene in the amount of $25,000 plus costs. On 19 December 1986, Greene's attorney also petitioned the court to determine the distribution of the judgment proceeds pursuant to N.C. Gen. Stat. § 97-10.2(j) (1985). On 21 January 1987, an Order was entered directing that the proceeds of the judgment against Greene "be distributed in part to Plaintiffs, in part to counsel for Plaintiffs [Williams] and in part to Michigan Mutual [the workers' compensation insurance carrier]." Neither the text of the 19 December 1986 Judgment against Greene, nor that of the 21 January 1987 Order, distributing the proceeds, appears of record.

PATRICK v. WILLIAMS

[102 N.C. App. 355 (1991)]

On 27 January 1987, Williams filed a motion pursuant to Rule 60 of the North Carolina Rules of Civil Procedure to have the Judgment of 19 December 1986 set aside. After a hearing on 10 June 1987, the trial court entered an Order on 7 July 1987 denying the Rule 60 motion on the grounds, among others, that "any alleged mistake claimed by the Plaintiffs in support of their motion [by Williams] to set aside the judgment of December 19, 1986 was a unilateral mistake, and a mistake of law, and it is therefore not appropriately remedied under Rule 60(b)(1)." Williams failed to file an appeal of that Order, consequently, the Judgment of 19 December 1986 remains final.

On 26 August 1988 the Patricks filed a complaint alleging that Williams was negligent in providing legal services to them. The essence of their complaint was that Williams committed "gross legal malpractice" by accepting the $25,000 offer of judgment and failing to appeal the order denying relief from the judgment entered on 19 December 1986, "thereby releasing forever . . . the primary tort-feasor, Jimmy H. Greene, and by operation of law . . . releasing" the insurance companies providing applicable underinsured motorist coverage. Williams answered, and, after further pleadings, the parties made cross-motions for partial summary judgment.

Amending an earlier order, the trial court entered an Order on 19 January 1990, which included the following dispositions: (1) denied defendants' motion to amend their answer; (2) granted defendants' motion for partial summary judgment on the plaintiffs' claim for punitive damages; (3) granted defendants' motion for a protective order from plaintiffs' discovery request for documents related to defendants' financial worth; (4) granted plaintiffs' motion for partial summary judgment "in regard to negligence of the original tort feasor Jimmy Harris Greene"; and (5) granted plaintiffs' motion for partial summary judgment on their claim regarding defendants' legal malpractice. Further, the order provided: (6) "that the liability insurance policies were in effect prior to the 1985 amendments to N.C.G.S. § 20-179.21(b)(4), and the Michigan Mutual policy provided $60,000.00 underinsurance coverage, and the Iowa National policy provided for $50,000.00 underinsurance coverage"; and (7) "[t]hat the issue of any credit for amounts paid to or for the benefit of the Plaintiff, Bobby Charles Patrick, pursuant to the Workers' Compensation Act is not an issue before the Court at this time, and the Court declines to rule thereon."

Plaintiffs and defendants appealed the Order of 19 January 1990. We shall discuss defendants' appeal first. Defendants assign error to the trial court's rulings in issues (1), (4), (5), and (7) above. We address these assignments of error seriatim.

[1] The defendants contend that the trial court abused its discretion in denying their motion to amend their answer. We disagree.

Rule 15(a) of the North Carolina Rules of Civil Procedure provides that, after the time for amendment as a matter of right expires, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." N.C. Gen. Stat. § 1A-1, Rule 15(a) (1990). As defendants correctly note, a motion to amend is addressed to the sound discretion of the court, and its decision will not be disturbed on appeal without a clear showing of abuse of discretion. *United Leasing Corp. v. Miller*, 60 N.C. App. 40, 42, 298 S.E.2d 409, 411 (1982), *disc. review denied*, 308 N.C. 194, 302 S.E.2d 248 (1983). It does not appear of record that defendants moved, pursuant to Rule 52(a) of the North Carolina Rules of Civil Procedure, for findings and conclusions to support the court's decision. Without such a motion, formal findings and conclusions are not required, and it is " 'presumed that the Judge, upon proper evidence, found facts to support' " the ruling. *Allen v. Wachovia Bank and Trust Co.*, 35 N.C. App. 267, 269, 241 S.E.2d 123, 125 (1978) (quoting *Haiduven v. Cooper*, 23 N.C. App. 67, 69, 208 S.E.2d 223, 224 (1974) ).

Where there is no declared reason for the denial of a motion to amend, an appellate court "may examine any apparent reasons for such denial." *Leasing Corp.*, 60 N.C. App. at 43, 298 S.E.2d at 411. Among the reasons justifying denial of amendment are: "(a) undue delay, (b) bad faith or dilatory tactics, (c) undue prejudice, (d) futility of amendment, and (e) repeated failure to cure defects by previous amendments." *Id.* at 43, 298 S.E.2d at 411-12. In the case below defendants moved to amend their answer almost a full year after filing it and after both parties had conducted extensive discovery. Moreover, if the trial court had allowed amendment, plaintiffs would have been required to produce evidence of Greene's negligence approximately five years after the accident. Thus, at least on grounds of defendants' undue delay and undue prejudice to plaintiffs, the trial court's ruling was justified. We note finally that by their motion to amend the defendants sought to deny the

allegation that plaintiff Bobby Patrick was damaged "as a direct and proximate result of the negligence of James H. Greene." Defendants' original answer admitted that allegation, and the withdrawal of a judicial admission is not favored. 31A C.J.S. § 299 (1964). Accordingly, we hold the trial court did not abuse its discretion.

[2]   We turn next to defendants' contention that the trial court erred "in allowing the plaintiffs' motion for partial summary judgment on the issue of the negligence of Jimmy H. Greene." Emphasizing in particular Greene's affidavit dated 27 November 1989, defendants contend that for purposes of summary judgment there remains a genuine issue of fact regarding Greene's negligence in the 1984 accident. We disagree.

We first note that summary judgment is to be granted when, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Beckwith v. Llewellyn*, 326 N.C. 569, 573, 391 S.E.2d 189, 191 (1990).

The defendants' answer, filed 28 October 1988, expressly admitted the allegations contained in paragraphs one through eight and paragraph ten of the plaintiffs' complaint. Paragraphs seven, eight, and ten of that complaint made the following pertinent allegations of fact:

7. That as a direct and proximate result of the negligence of the aforesaid James H. Greene, Plaintiff, Bobby C. Patrick, sustained serious, crippling and permanent injuries . . . .

8. That as a direct and proximate result of the negligence of James H. Greene, as set forth above, the Plaintiff, Bobby C. Patrick, has been damaged to and about his person in excess of $10,000.00.

* * * *

10. That at the time of the automobile collision referred to above, on December 5, 1984, Plaintiff Bobby C. Patrick was a regular employee of Neese's Country Sausage Company, Inc., a North Carolina corporation, and was then and there operating a 1980 Chevrolet truck owned by his employer; that the aforesaid James H. Greene was operating a 1972 Ford

vehicle and negligently collided with the vehicle being operated by Plaintiff Bobby C. Patrick . . . .

A judicial admission is made for the purpose of removing a fact or facts from the realm of dispute between litigants. Such an admission "is binding in every sense, absent a showing of fraud, misrepresentation, undue influence or mutual mistake. Evidence offered in denial of the admitted fact should undoubtedly be rejected." 2 H. Brandis, Brandis on North Carolina Evidence § 166 (3d ed. 1988). This Court has repeatedly held that a party seeking to avoid summary judgment cannot create a genuine issue of material fact by offering evidence "which contradicts prior judicial admissions." *Brown v. Lyons*, 93 N.C. App. 453, 458, 378 S.E.2d 243, 246 (1989); accord, *Rollins v. Junior Miller Roofing Co.*, 55 N.C. App. 158, 162, 284 S.E.2d 697, 701 (1981); and *Mortgage Co. v. Real Estate, Inc.*, 39 N.C. App. 1, 9, 249 S.E.2d 727, 732 (1978), *disc. review allowed*, 296 N.C. 585, 254 S.E.2d 32, *aff'd*, 297 N.C. 696, 256 S.E.2d 688 (1979). Thus, for purposes of the case below, the trial court correctly held defendants to be bound by their solemn admissions, and it properly granted summary judgment on the issue of Greene's liability.

[3] We turn next to defendants' contention that it was error to grant partial summary judgment for the plaintiffs "on the issue of defendants' legal malpractice." Citing *Rorrer v. Cooke*, 313 N.C. 338, 329 S.E.2d 355 (1985), defendants maintain that, "in pursuing a claim for legal malpractice, the Plaintiff must prove that: (1) the original claim was valid; (2) it would have resulted in a Judgment in Plaintiff's favor; and (3) the Judgment would have been collectable." Defendants' argument misreads *Rorrer* and misstates the legal standard applicable to the case below. As a close reading of *Rorrer* makes plain, the three-prong test adopted by defendants applies only "[w]here the plaintiff bringing suit for legal malpractice has *lost* another suit allegedly due to his attorney's negligence." (Emphasis added.) *Rorrer*, 313 N.C. at 361, 329 S.E.2d at 369. The plaintiffs' case against Greene never went to trial, nor to summary judgment, nor was it dismissed by the trial court. It was settled by acceptance of an offer of judgment.

As *Rorrer* notes, our Supreme Court's most thorough exposition of legal malpractice is found in *Hodges v. Carter*, 239 N.C. 517, 80 S.E.2d 144 (1954). The general standard applicable to an

PATRICK v. WILLIAMS

[102 N.C. App. 355 (1991)]

attorney, set out in *Hodges* and quoted with approval in *Rorrer*, is as follows:

> Ordinarily when an attorney engages in the practice of the law and contracts to prosecute an action in behalf of his client, he impliedly represents that (1) he possesses the requisite degree of learning, skill, and ability necessary to the practice of his profession and which others similarly situated ordinarily possess; (2) he will exert his best judgment in the prosecution of the litigation entrusted to him; and (3) he will exercise reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to his client's cause.
>
> \* \* \* \*
>
> [An attorney] is answerable in damages for any loss to his client which proximately results from a want of that degree of knowledge and skill ordinarily possessed by others of his profession similarly situated, or from the *omission to use reasonable care and diligence, or from the failure to exercise in good faith his best judgment in attending to the litigation committed to his care.*

*Rorrer*, 313 N.C. at 341, 329 S.E.2d at 358 (emphasis added).

Applying that standard to the case below, we note that the defendants' answer admitted that, as a result of the accident in 1984, plaintiff Bobby Patrick "sustained serious injuries and . . . that his medical expenses, treatment, and lost income are in excess of $63,000." As noted above, the defendants admitted that Greene's negligence caused the accident. The defendants further admitted that the Iowa National insurance policy provided "to the plaintiffs . . . underinsured motorist coverage in the amount of $50,000" and that Bobby Patrick's employer was insured by Michigan Mutual under a policy which "would and did inure to the benefit of the plaintiffs."

Regarding the amount of Patrick's claim against Greene and Greene's ability to pay a judgment against him, Ronald Williams testified as follows:

Q Now, did you ever form an opinion during your representation of Mr. Patrick as to what would be a fair amount to settle his case that you would recommend to him to accept?

A  No.

* * * *

[Y]ou don't know what assets that [Greene] may have had to satisfy [a] judgment, do you?

A  Specifically, no, I don't.

Q  You never had done anything about checking him out as to what he owned in the way of real estate or any other assets?

A  My recollection of that is this: That I asked his attorney about that and got an answer that he didn't have anything to speak of and likely that it was nothing in excess of the exemptions that are granted a judgment debtor in North Carolina.

Q  You relied then on what his attorney — Greene's attorney told you?

A  I believe that I did, yes. If I did not, I did not have other information. I'll tell you that.

In their complaint the plaintiffs stated that Williams did not consult with them before accepting Greene's offer of judgment. Williams answered the plaintiffs' allegation as follows: "[T]he defendants have no independent recollection at this time of accepting the offer of $25,000 without consulting with the plaintiffs, nor do the defendants have any independent recollection of consulting with the plaintiffs prior to accepting said offer. As such, the allegations . . . are denied." In support of their motion for partial summary judgment on the issue of defendants' malpractice, both plaintiffs presented affidavits stating that they had not authorized Williams to settle their lawsuit for $25,000, that they were not consulted about the offer of judgment in December 1986 when it was made, and that they first learned about the settlement when they received a letter from Williams "dated July 8, 1987 stating that the $25,000.00 had been paid into the Court." No response to these affidavits appears of record. Rule 56(e) of the North Carolina Rules of Civil Procedure provides in part as follows:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response,

by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

N.C. Gen. Stat. § 1A-1, Rule 56(e) (1990).

Regarding Patrick's claims under the Iowa National and Michigan Mutual insurance policies, Williams testified that

it was not my opinion when I accepted that money that it terminated his claim.

Q When did it become your opinion?

A I'm not sure but it is now.

Q It is now?

A Uh huh.

Q And what do you base that on?

A The denial of my Rule 60-B motion and — yeah. The case is over.

Q The case is over?

A Yeah. I don't think he had any claims after that to them.

Q When was it over?

A I think it was over when the judge denied my Rule 60-B motion and I did not pursue the appeal.

Q And when was that?

A When the — I guess on July 7, 1987, when the order was entered denying my Rule 60-B motion.

Q And when did the time for appeal expire from that?

A That would have been ten days later.

The defendants contend that Williams' letter of 15 December 1986 was intended solely "to put the underinsured motorist [insurance] carriers on notice of the fact that a settlement was about to be accomplished with the insurance carrier for the primary defendant." They maintain that "Williams simply did not accept an Offer of Judgment as contemplated under Rule 68(a), but rather a letter he wrote to third parties was construed as an acceptance

of [the offer of judgment] by the counsel for [Greene]" and the clerk of court who entered judgment. In an affidavit submitted to the trial court in support of his Rule 60 motion, Williams stated, in pertinent part, that

> [d]iscovery revealed that Michigan Mutual had $60,000 underinsured motorist coverage wherein Mr. Patrick was the "insured" and that Iowa National had $50,000 underinsured motorist coverage wherein he was the "insured." Mr. Patrick has incurred over $62,000 in medical bills and lost wages alone which [have] been paid by the worker[s'] compensation carrier.
>
> * * * *
>
> Mr. Byrum, [counsel for Greene] drew and submitted his judgment on December 19, 1986 without first submitting it to Plaintiffs' counsel. It was signed that same day. If Mr. Byrum had submitted it to Plaintiffs' counsel beforehand, he would have had a chance to review it and require that the judgment be restricted to preserve Plaintiffs' claims against the underinsured motorist carriers and if Mr. Byrum and Plaintiffs' counsel could not have agreed on the language, no judgment would have been entered.

Nevertheless, as Williams conceded, he failed to file, much less perfect, an appeal of the trial court's Order of 7 July 1987, which ruled that no reason justified relief from the Judgment of 19 December 1986; consequently, the plaintiffs were barred from recovering their damages from insurance proceeds that would otherwise have been available.

Thus, the forecast of uncontroverted evidence was that Williams failed to estimate the value of plaintiff Bobby Patrick's claim against Greene, failed to make an independent evaluation of Greene's assets, failed to consult his clients about Greene's offer of judgment and to inform them of the entry of judgment pursuant to Rule 68 until more than six months had passed, and failed to appeal the trial court's Order of 7 July 1987 which terminated Bobby Patrick's claims to underinsured motorist coverage. These successive failures constitute an omission of reasonable care and diligence that proximately caused damage to his clients. Thus, the trial court properly entered summary judgment on the issue of defendants' legal malpractice.

[4] We turn next to defendants' contention that the trial court erred in declining to decide whether the amount of underinsured motorist coverage otherwise available should be reduced by "any amount paid to or for the benefit of the plaintiff, Bobby Charles Patrick, pursuant to the Workers' Compensation Act." We agree.

While neither the plaintiffs' nor the defendants' motion for partial summary judgment gave notice of this issue, we note that it was argued before the trial court. The notice required by Rule 56(c) of the North Carolina Rules of Civil Procedure may be waived "by participation in the hearing and by a failure to object to the lack of notice or failure to request additional time by the non-moving party." *Westover Products v. Gateway Roofing*, 94 N.C. App. 163, 166, 380 S.E.2d 375, 377 (1989). It does not appear of record that the plaintiffs either objected to or moved for additional time on this issue. Moreover, in response to the defendants' request for admissions, the plaintiffs conceded that the Michigan Mutual policy provided for reduction in underinsured motorist coverage "by the amount of workers' compensation benefits paid to a party" claiming underinsured motorist coverage. We note, finally, that the plaintiffs themselves moved for partial summary judgment with regard to the "amount of underinsurance [coverage] available" to them. Calculation of and judgment on that amount would necessarily involve the reduction, if any, permissible for workers' compensation benefits paid to plaintiff Bobby Patrick. A reduction is permitted under some circumstances, *see, e.g., Manning v. Fletcher*, 324 N.C. 513, 379 S.E.2d 854 (1989), *rehearing denied*, 325 N.C. 277, 384 S.E.2d 517 (1989), *appeal after remand*, 102 N.C. App. 392, 402 S.E.2d 648 (1991), but not others, *see, e.g., Ohio Casualty Group v. Owens*, 99 N.C. App. 131, 392 S.E.2d 647, *disc. review denied*, 327 N.C. 484, 396 S.E.2d 614 (1990).

We hold that plaintiffs waived the requirement for notice on this issue and that the trial court should have reached it before giving judgment on the amount of underinsurance coverage that would have been available to plaintiff Bobby Patrick. Accordingly, we reverse the trial court's order with respect to this issue and remand the case for a determination of the amount of workers' compensation benefits paid and the permissible reduction, if any, in the amount of underinsured motorist coverage.

The plaintiffs' cross-appeal assigns error to issues (2), (3), and (6) in the trial court's order of 19 January 1990. We address these in . turn.

**[5]** The plaintiffs contend that the trial court erred in granting the defendants' motion for partial summary judgment on the issue of punitive damages. We agree.

Where a claim is grounded in negligence rather than an intentional tort, punitive damages may be recovered only for gross or wanton negligence. *Paris v. Michael Kreitz, Jr., P.A.*, 75 N.C. App. 365, 373-74, 331 S.E.2d 234, 241, *disc. review denied*, 315 N.C. 185, 337 S.E.2d 858 (1985). Our Supreme Court, "in references to gross negligence, has used that term in the sense of wanton conduct. . . . Conduct is wanton when in conscious and intentional disregard of and indifference to the rights and safety of others." *Hinson v. Dawson*, 244 N.C. 23, 28, 92 S.E.2d 393, 396-97 (1956). Where the pleadings and evidence warrant,

> an issue as to punitive damages should be submitted to the jury. Upon submission thereof, it is for the jury to determine (1) whether punitive damages in *any* amount should be awarded, and if so (2) the amount of the award. These questions are determinable by the jury in its discretion.

*Id.* at 26, 92 S.E.2d at 395. Applying these principles to the case below, we conclude that the forecast of evidence supports the submission of an issue as to punitive damages.

While case law clearly establishes that attorneys may be held liable, among other breaches of duty, for failing to inform their clients of an existing settlement offer, *see*: 2 R. Mallen & J. Smith, *Legal Malpractice* § 24.36 (3d ed. 1989) and Annotation, *Legal Malpractice in Settling or Failing to Settle Client's Case*, 87 A.L.R. 3d 168, 183-85 (1978), neither the plaintiffs nor the defendants cite case law from this or other jurisdictions bearing on punitive damages as applied to facts substantially the same as those involved in the case below. We are aware of no case law precisely on point. Our review of plaintiffs' evidence below leads us to the conclusion that the successive failures of the defendants constituted gross negligence. Plaintiffs' forecast of evidence showed that defendants failed to determine the assets of the original alleged tort-feasor, failed to estimate the value of plaintiffs' claim, accepted a binding settlement offer without consulting plaintiffs, did not perfect an appeal of the trial court's denial of his motion to set aside the judgment reflecting the settlement, and failed to disclose the entry of judgment for more than six months, which prohibited plaintiffs from being able to make a claim for any other available insurance

proceeds. We thus hold the plaintiffs are entitled to submit to the jury an issue as to punitive damages. This is not to say that every claim involving the breach of a fiduciary duty nor every action involving legal malpractice supports a claim for punitive damages. But where, as here, plaintiffs offer evidence that defendants engaged in a repeated course of conduct which constituted a callous or intentional indifference to the plaintiffs' rights, the plaintiffs have made out a claim for punitive damages. Accordingly, summary judgment for the defendants on the issue of punitive damages is reversed.

We turn next to the plaintiffs' contention that the trial court erred in granting the defendants' motion for a protective order regarding plaintiffs' discovery proceedings on defendants' net worth. Because the evidence supports the submission of an issue as to punitive damages, the trial court's order on this issue was in error and is reversed.

Finally, in view of our holding that the trial court erred in declining to decide whether the underinsured motorist coverage that would otherwise have been available should be reduced by workers' compensation benefits paid, we need not reach the plaintiffs' assignment of error to the trial court's conclusion that the "Michigan Mutual policy provided $60,000.00 underinsurance coverage, and the Iowa National policy provided for $50,000.00 underinsurance coverage." Upon remand the trial must first determine whether a reduction for benefits paid under workers' compensation applies before calculating the applicable amounts of underinsured motorist coverage.

In summary, we hold:

(1) The trial court did not err in denying defendants' motion to amend their answer;

(2) The trial court erred in granting summary judgment for defendants on the issue of punitive damages;

(3) The trial court erred in granting defendants' motion for a protective order regarding defendants' financial worth;

(4) The trial court did not err in granting summary judgment for plaintiffs in regard to the negligence of the original tort-feasor Greene;

(5) The trial court did not err in granting summary judgment for plaintiffs on the issue of defendants' legal malpractice; and

(6) The trial court erred in declining to decide the issue of whether to reduce the amount of coverage available by payments made pursuant to the Workers' Compensation Act.

Affirmed in part, reversed in part, and remanded.

Judges WELLS and LEWIS concur.