J. E. WALL, TRUSTEE, v. E. A. ROTHROCK AND S. M. PEACOCK.

(Filed 26 April, 1916.)

**1. Corporations—Directors—Borrowing Money—Mortgages.**

The authority of a board of directors to borrow money for the corporation's needs impliedly carries with it the power, without a vote of the stockholders, to secure the loan by mortgage on the corporate property, unless specially restrained by the charter or by-laws. *Semble,* this principle is impliedly recognized by staute, Revisal, sec. 1005.

**2. Same—Loans by Directors—Indorsers—Bills and Notes.**

The directors of a corporation, unless restricted by its charter or by-laws, may cause a valid mortgage on the corporate property to be executed to secure one or more of them, in lending money to or incurring a liability for the present needs of the corporation in pursuance of its authorized business.

**3. Same—Fiduciaries—Insolvency—Pre-existing Debt.**

The directors of a corporation occupy a fiduciary relation, and are not permitted to secure themselves against preëxisting liabilities of the corporation upon which they are already bound, or for money they may have already loaned, when the corporation is in declining circumstances and verging on insolvency.

**4. Same—Issues.**

In an action by a trustee in bankruptcy of an insolvent corporation to set aside a certain mortgage made by the corporation to its directors to secure their indorsements on the corporation's paper, which the indorsers have paid, proper issues should be submitted to the jury determinative of the questions of whether the mortgage was given to secure the directors on a preëxisting debt or liability, and as to whether the corporation was in failing circumstances at the time of its registration.

**5. Corporations—Directors—Loan by Directors—Mortgages—Registration—Fraud on Creditors—Issues.**

Where the directors of a corporation cause a mortgage on the corporate property to be given to secure the liability of some of its members for indorsing its paper used in the course of its authorized business, and it appears that the mortgage was not registered within eleven months after its execution, and there is evidence tending to show that the corporation was insolvent at the date of its registration, such indorsers are not permitted to withhold their mortgage from registration in order to give the corporation a fictitious credit to those dealing with it between the date of its execution and registration; and this question is for the determination of the jury upon a proper issue arising from the evidence, and under correct instructions thereon.

CIVIL ACTION, tried before *Cline, J.,* and a jury, at February Term, 1916, of DAVIDSON, upon these issues:

1. Is the deed of mortgage mentioned in the pleadings the act and deed of the Southmont Spoke, Hub and Handle Company, now bankrupt?  Answer:  "Yes."

2: Was the said Southmont Spoke, Hub and Handle Company at the time of the execution of said paper-writing insolvent and unable to pay its debts?  Answer:  "No."

3. Was the said deed of mortgage executed with the fraudulent purpose and intent to defeat the rights of other creditors and unduly prefer the defendants?  Answer:  "No."

4. What amount, if any, were the defendants required to pay on account of the indebtedness secured in said mortgage and what amount, if any, is now due thereon to the defendants?  Answer:  "$3,350.16."

. From the judgment rendered, the plaintiff appealed.

*P. V. Critcher, McCreary & McCreary, Walser & Walser for plaintiffs.
Roper & Roper, J. F. Spruill, Phillips & Bower for defendants.*

BROWN, J.  This action is brought by plaintiff as trustee in bankruptcy of the Southmont Spoke, Hub and Handle Company to set aside a mortgage made by the bankrupt to the two defendants, one of whom, Rothrock, was president, and both of whom were directors of the said corporation.  The mortgage is dated February, 1913, was recorded 15 January, 1914, and secures the defendants as indorsers of four notes

of same date executed by the bankrupt to the Bank of Lexington for money loaned. The plaintiffs have paid the notes and now seek to foreclose their mortgage.

Plaintiff in apt time requested the following instructions:

1. If the jury find from the evidence that the mortgage was authorized by the directors and not by the stockholders, you will answer the first issue "No."

2. If the jury believe the evidence, they will answer the third issue "Yes."

These instructions the court properly declined to give.

The first prayer raises the general question as to the right of directors ever to mortgage the corporate property without the consent of the stockholders. It is well settled that, as a general rule, the directors of a corporation, unless they are specially restrained by the charter or by-laws, have the power to borrow money with which to conduct the business and to secure payment by mortgage on the corporate property. 10 Cyc., 765.

The power to borrow money carries with it by implication the power to secure the loan by mortgage. 2 Beach on Corp., sec. 388; 1 Morawetz, sec. 346. Cook says, vol. 3, sec. 808: "It is now the established rule that the board of directors, without any action whatever by the stockholders, has the power to authorize the execution of a mortgage on the corporate property." Same author, section 712, says: "The stockholders, indeed, have very few functions. The board of directors have the widest of powers. All the various acts and contracts which a corporation may enter into are entered into by and through the board of directors. The board of directors make or authorize the making of notes, bills, mortgages, sales, deeds, liens, and contracts generally of the corporation."

Our statute, Rev. 1905, sec. 1005, appears to recognize inferentially the power of a board of directors to mortgage the corporate property.

In *Duke v. Markham,* 105 N. C., 135, it is said by the present *Chief Justice* that "a president and cashier, as such, cannot execute a mortgage of corporate property without special authority from the board of directors or the stockholders."

The other prayer was properly refused, because fraud is generally a question of fact, and, taking the evidence as a whole, the court could not as matter of law pronounce the transaction fraudulent and void.

It is true that it is held in *Edwards v. Supply Co.,* 150 N. C., 171, that a mortgage on all its property, made by a corporation under authority of its directors with a vote of the stockholders, to secure them in their *prior indorsements* of the corporation's notes negotiated for the benefit of the corporation is void; otherwise had the mortgage been authorized at the time of the indorsements and receipt of the money to aid the corporation's business.

In that case it is also held that when a mortgage has been made on all its property by a corporation to its officers to secure a preëxisting debt, the company continuing in possession, it is evidence sufficient to sustain a *holding* of the referee that it was void as to other creditors. In that case the property consisted of a stock of goods *continually being depleted,* and the proposition is based upon the doctrine laid down in *Cheatham v. Hawkins,* 76 N. C., 335, and *Cowan v. Phillips,* 119 N. C., 26. In those cases it is held that such facts are not absolutely fraudulent in law, but such evidence of fraud that the burden of proof rests upon the party claiming under the mortgage to disprove the fraud. Facts which will justify a jury or a referee in finding fraud do not always warrant a court in adjudging fraud as matter of law.

We think that there is no doubt that a board of directors, unless restricted by charter, may borrow money for the *present* needs of the corporation, and authorize certain directors to indorse the notes and secure them by mortgage on the corporate property, if done in good faith.

This just principle is recognized by *Chief Justice Clark* in *Edwards v. Supply Co., supra;* by *Mr. Justice Manning* in *Powell v. Lumber Co.,* 153 N. C., 56, quoting from *Edwards v. Supply Co.,* and by *Mr. Justice Hoke* in *Whitlock v. Alexander,* 160 N. C., 479.

There is nothing to hinder a director from loaning money and taking liens on the corporate property to secure him. If he can do that, he can lend his credit by indorsing its paper in order to obtain needed cash, and secure himself upon the corporation's property. Such transactions are looked upon with suspicion, and strict proof of their *bona fides* is required. *Hill v. Lumber Co.,* 113 N. C., 178; *Oil Co. v. Marbury,* 81 U. S., 587.

But the directors, occupying a fiduciary relation, are not permitted to secure themselves against preëxisting liabilities of the corporation upon which they are already bound, or for money they may have already loaned, when the corporation is in declining circumstances and verging on insolvency. They cannot be permitted to take advantage of their intimate knowledge of the corporation's affairs for their own benefit at the expense of the general creditors.

We think, however, that the plaintiff's exceptions to the issues submitted are well taken. They are not determinative of the controversy. There is no finding of fact as to when the debts were contracted originally, whether the notes were renewal notes of other notes already indorsed by defendants or either of them, and which one.

There is no need to submit the first and second issues tendered by plaintiff, as those facts appear to be admitted. The other three issues should have been submitted; also an issue as to whether at the time of the registration of the mortgage the corporation was in failing circumstances and verging on bankruptcy. It is immaterial that the corpora-

tion was solvent at date of the mortgage. ' The question is, What was its condition when the defendant directors put it on record and attempted to shelter themselves under its protection as against the other creditors?

The defendant Rothrock seems to stand upon a somewhat different footing, if his evidence is taken to be true. According to his version, he was elected director and president, 13 February, 1913, and that was his first connection with the corporation. He was not on any of its outstanding notes, and refused to indorse the notes until the directors executed a corporate mortgage securing him against loss. This would be a legitimate transaction, according to the authorities cited heretofore. Nevertheless, if he failed to record the mortgage in order to give the corporation a fictitious credit, he would not be permitted to set it up against those who extended credit to the company between its execution and registration, and the same rule would apply to his codefendant, even if his indorsement was an original instead of a renewed liability.

New trial.