THE BOB TIMBERLAKE COLLECTION, INC., PLAINTIFF v. MARSHALL EDWARDS, DEFENDANT

No. COA04-1434

(Filed 21 February 2006)

**1. Appeal and Error— appealability—allowance of motion to dismiss—counterclaims—substantial right—identical issues of fact—possibility of inconsistent verdicts**

Although defendant's appeal from the grant of a motion to dismiss his counterclaims is generally an appeal from an interlocutory order, defendant would be deprived of a substantial right if an immediate appeal is not allowed. Defendant showed that plaintiff's claims of breach of a stock purchase agreement, default on a promissory note, negligent misrepresentation, and defendant's counterclaims of fraud, negligent misrepresentation, securities fraud, unfair and deceptive trade practices, breach of a stock purchase agreement, and breach of a January 2002 agreement involve identical issues of fact with the possibility of inconsistent verdicts resulting from the same factual issues.

**2. Fraud— failure to allege elements with particularity**

Defendant failed to state a counterclaim for fraud in plaintiff's action for breach of a stock purchase agreement because he failed to plead with particularity the elements of fraud where he alleged that representatives of plaintiff gave him false information concerning the corporation, but defendant did not identify

which representatives gave him false information or specifically allege where or when he received the information.

### 3. Fraud— negligent misrepresentation—insufficient allegations

Defendant failed to state a counterclaim for negligent misrepresentation in plaintiff's action for breach of a stock purchase agreement where defendant failed to allege that plaintiff or its representatives owed any duty to defendant or breached any duty owed, and there was no allegation that information provided to defendant was prepared without reasonable care or that any supposed breach was a proximate cause of injury to defendant.

### 4. Securities— fraud—insufficient allegations

Defendant failed to state a counterclaim for fraud under the North Carolina Securities Act in plaintiff's action for breach of a stock purchase agreement where defendant did not allege that the shares he purchased were securities under the Act, did not allege that plaintiff sold such a security by means of any untrue statement of a material fact or any omission to state a material fact other than a conclusory allegation that representatives of plaintiff provided him with false information, and did not allege that he did not know and in the exercise of reasonable care could not have known of any untruth or omission. N.C.G.S. § 78A-8(2) and 78A-56(a)(2).

### 5. Unfair Trade Practices— insufficient allegations

Defendant failed to state a counterclaim for an unfair or deceptive trade practice in plaintiff's action for breach of a stock purchase agreement where defendant did not allege what conduct of plaintiff constituted an unfair and deceptive trade practice or that any specific conduct by plaintiff caused injury to defendant. If this counterclaim relates to plaintiff's alleged breach of the stock purchase agreement or alleged breach of a subsequent agreement that plaintiff would defer payment of the final installment due under the stock purchase agreement, defendant made no allegation of any substantial aggravating circumstances attending the breach of contract.

### 6. Contracts— representations and warranties—contractual limitations period

Defendant's counterclaim for breach of the representations and warranties section of a stock purchase agreement based

upon alleged inaccurate financial information was barred by a two-year limitation in the agreement for representations and warranties where defendant did not allege that he gave notice to plaintiff within the two-year limitation period of any breach or nonconformity of any representation or warranty.

**7. Contracts— unilateral offer—absence of acceptance and consideration**

The purchaser of corporate shares did not have a contract with the seller to delay indefinitely the third payment due pursuant to the stock purchase agreement where the seller wrote a letter to the purchaser proposing to delay the third payment if the buyer made the second payment due under the agreement, the purchaser never responded to the letter or made the second payment, the purchaser thus never accepted the terms of the seller's unilateral offer, and there was no consideration to support a valid agreement.

**8. Pleadings— counterclaims—denial of motion for leave to amend**

The trial court did not abuse its discretion by denying defendant's motion for leave to amend his counterclaims, because: (1) the trial court specifically reviewed N.C.G.S. § 1A-1, Rule 15 in open court after hearing defense counsel's argument, and defendant would have been able to amend his counterclaims without leave of court at any point prior to the responsive pleading being filed; (2) it was only after having been served plaintiff's responsive pleading and having notice of plaintiff's motion to dismiss that defendant moved orally to amend his pleadings at the hearing; and (3) such an undue delay of time in making a motion to amend is a valid reason for denying such motion.

Appeal by defendant from orders entered 24 May and 17 June 2004 by Judge Steve A. Balog in Davidson County Superior Court. Heard in the Court of Appeals 15 June 2005.

*Allman, Spry, Leggett & Crumpler, P.A., by W. Rickert Hinnant, for plaintiff-appellee.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Robert J. King, III, and Katherine A. Murphy, for defendant-appellant.*

BRYANT, Judge.

Marshall Edwards (Edwards-defendant) appeals from orders entered 24 May and 17 June 2004 by which the trial court (1) granted The Bob Timberlake Collection, Inc.'s (BTI-plaintiff) motion to dismiss defendant's counterclaims and (2) denied defendant's motion for leave to amend his counterclaims.

The dispute between BTI and Edwards arose out of the sale of Riverwood, Inc. (Riverwood) in 2001. Pursuant to a stock purchase agreement, Edwards purchased 90% of the stock in Riverwood in exchange for which he agreed to pay BTI $800,000.00 in three payments. Edwards made the first payment of $250,000.00 at closing on 30 April 2001, and the remaining payments of $250,000.00 and $300,000.00 were to be secured by promissory notes.

After entering into the stock purchase agreement, Edwards claimed that prior to his purchase, BTI made inaccurate statements to him regarding the following as to Riverwood's: "established" sales force; general ledger trial balance; and general ledger reflecting ownership of certain equipment that was actually owned by third parties. Edwards raised his concerns with the chief operating officer of BTI, Daniel Timberlake (Timberlake). In response to Edwards' concerns, Timberlake wrote Edwards a letter dated 18 January 2002 that stated if Edwards made the second payment due under the terms of the stock purchase agreement, the third payment of $300,000.00, originally "due and payable on or before" 15 February 2002, would be delayed indefinitely. Edwards did not respond to the 18 January 2002 letter. He did not make the second $250,000.00 payment, or the third $300,000.00 payment, or sign a new promissory note.

As of October 2002, Edwards had paid a total of $5,250.00 in interest payments under the terms of the promissory note. However Edwards did not make further payments toward the principal balance owed despite BTI's demand to do so. On 2 July 2003, BTI filed a complaint alleging breach of the stock purchase agreement, default of promissory note, and misrepresentation. On 5 September 2003, Edwards filed an answer and counterclaims which included claims for fraud, negligent misrepresentation, securities fraud, unfair and deceptive trade practices, breach of the stock purchase agreement and breach of a January 2002 agreement. BTI answered Edwards' counterclaims on 29 September 2003 and filed a motion to dismiss Edward's counterclaims. On 10 May 2004, the trial court heard BTI's motion to dismiss. Edwards's oral motion for leave to amend his

counterclaims was denied in open court. In an order signed 17 May 2004, the trial court granted BTI's motion to dismiss Edward's counterclaims with prejudice for failure "to state proper claims for which relief can be granted pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure." Edwards subsequently filed a motion requesting the trial court to reconsider its denial of his motion to amend, which was also denied. Edwards appeals.

On appeal defendant raises two substantive issues whether the trial court erred by: (I) granting plaintiff's motion to dismiss defendant's counterclaims and (II) denying defendant's motion for leave to amend his counterclaims.

[1] As a preliminary matter we must determine whether the appeal is from an interlocutory order and therefore is subject to dismissal. An order or judgment is interlocutory if it is made during the pendency of an action and does not dispose of the case but requires further action by the trial court in order to finally determine the entire controversy. *Cagle v. Teachy*, 111 N.C. App. 244, 247, 431 S.E.2d 801, 803 (1993) (citation omitted). There is generally no right to appeal an interlocutory order. *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994) (citation omitted). The purpose of this rule is " 'to prevent fragmentary, premature and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts.' " *Id.* (quoting *Fraser v. Di Santi*, 75 N.C. App. 654, 655, 331 S.E.2d 217, 218, *disc. rev. denied*, 315 N.C. 183, 337 S.E.2d 856 (1985)).

However, a party may immediately appeal an interlocutory order or judgment in two ways. First, if the order or judgment is final as to some but not all of the claims or parties, and the trial court certifies the case for appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), an immediate appeal will lie. *Id.* Second, an appeal is permitted under N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1) if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review. *Id.*

In *Green v. Duke Power Co.*, 305 N.C. 603, 290 S.E.2d 593 (1982), the North Carolina Supreme Court held that the right to avoid a trial is generally not a substantial right, but the right to avoid two trials on the same issue may be a substantial right. *Id.* at 608, 290 S.E.2d at 596. The Court stated that "the possibility of undergoing a second trial affects a substantial right only when the same issues are present in

both trials, creating the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue." *Id.* In *Liggett Group, Inc. v. Sunas*, 113 N.C. App. 19, 437 S.E.2d 674 (1993), this Court stated:

> A substantial right . . . is considered affected if 'there are overlapping factual issues between the claim determined and any claims which have not yet been determined' because such overlap creates the potential for inconsistent verdicts resulting from two trials on the same factual issues.

*Id.* at 24, 437 S.E.2d at 677 (citation omitted). There is a two-part test requiring a party to show that (1) the same factual issues would be present in both trials and (2) the possibility of inconsistent verdicts on those issues exists. *Moose v. Nissan of Statesville, Inc.*, 115 N.C. App. 423, 426, 444 S.E.2d 694, 697 (1994).

Defendant, while acknowledging the appeal is from an interlocutory order, nevertheless asserts the appeal should be heard because the trial court's ruling affects a substantial right. Defendant contends the claims asserted by both parties involve identical issues of fact and that defendant would be prejudiced if these factual issues are not heard by the same jury. Defendant argues he is entitled to an immediate appeal because the trial court's order exposes him to the possibility of inconsistent verdicts upon "overlapping factual issues." After carefully reviewing the pleadings and the procedural development of this case, we agree.

Although BTI's claims remain viable and therefore not a final determination of the rights of the parties, we hold defendant would be deprived of a substantial right if an immediate appeal is not allowed. Defendant shows that plaintiff's claims of breach of a stock purchase agreement, default on a promissory note and negligent misrepresentation and his counterclaims of fraud, negligent misrepresentation, securities fraud, unfair and deceptive trade practices, breach of a stock purchase agreement and breach of a January 2002 agreement involve identical issues of fact. Defendant's defense of fraud would be presented in plaintiff's trial on the breach of contract claim and defendant's trial on fraud in the inducement. Therefore, there exists the possibility of inconsistent verdicts resulting from the same factual issues. Accordingly, the trial court's dismissal of defendant's counterclaims affects a substantial right which would prejudice defendant if we did not hear this appeal. Therefore, we will reach the merits of defendant's appeal.

## BOB TIMBERLAKE COLLECTION, INC. v. EDWARDS

[176 N.C. App. 33 (2006)]

## I

Defendant first argues the trial court erred by granting plaintiff's motion to dismiss defendant's counterclaims for failure to state a claim upon which relief may be granted. We disagree.

The question for this Court on a motion to dismiss pursuant to Rule 12(b)(6) is whether as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).

### Fraud

**[2]** Rule 9(b) of the North Carolina Rules of Civil Procedure requires that "in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." N.C. Gen. Stat. § 1A-1, Rule 9(b) (2005). "The well-recognized elements of fraud are 1) a false representation or concealment of a material fact, 2) reasonably calculated to deceive, 3) made with intent to deceive, 4) which does in fact deceive, and which 5) results in damage to the injured party. A complaint charging fraud must allege these elements with particularity." *Hunter v. Spaulding*, 97 N.C. App. 372, 377, 388 S.E.2d 630, 634 (1990) (internal citations omitted). "[I]n pleading actual fraud, the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981). Dismissal of a claim for failure to plead with particularity is proper where there are "no facts whatsoever setting forth the time, place, or specific individuals who purportedly made the misrepresentations." *Coley v. North Carolina Nat'l Bank*, 41 N.C. App. 121, 125, 254 S.E.2d 217, 220 (1979).

Here, defendant pleaded fraud in vague and general terms, alleging that **representatives** of BTI gave him information concerning Riverwood. However, defendant did not identify which representatives gave him false information, nor did he specifically allege where or when he received the information. Defendant failed to sufficiently plead the substantive elements of fraud with the required particularity. *See Coley* at 125-26, 254 S.E.2d at 219. Accordingly, we affirm the trial court's dismissal of Edwards' fraud claim.

### Negligent Misrepresentation

[3] Our Supreme Court has held that "the tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988). Plaintiff's claim could properly be dismissed by the trial court pursuant to Rule 12(b)(6) if no law exists to support the claim, if the complaint fails to allege sufficient facts to assert a viable claim, or if the complaint alleges facts that will necessarily defeat the claim. *Oberlin Capital, L.P. v. Slavin,* 147 N.C. App. 52, 61, 554 S.E.2d 840, 847 (2001) (citation omitted). With respect to negligent misrepresentation, "whether liability accrues is highly fact-dependent, with the question of whether a duty is owed a particular plaintiff being of paramount importance." *Marcus Bros. Textiles, Inc. v. Price Waterhouse, L.L.P.,* 350 N.C. 214, 220, 513 S.E.2d 320, 325 (1999).

Here, the trial court properly dismissed the negligent misrepresentation claim for failure to allege all the required facts and because the complaint includes facts that necessarily defeat the claim. In his counterclaim for negligent misrepresentation, Edwards pleads a legal conclusion that "such misrepresentations were made negligently," that "Timberlake, Inc. had a financial interest in such misrepresentations," that "Edwards relied upon Timberlake, Inc.'s negligent misrepresentations," that "such reliance was reasonable," and that "Edwards has been damaged by Timberlake's negligent misrepresentations in an amount to be established at trial." However, Edwards failed to allege BTI or its "representatives" owed any duty to Edwards or breached any duty owed. Further, there was no allegation that the information provided was prepared without reasonable care, or that any supposed breach was a proximate cause of the injury. Edwards has failed to allege sufficient facts which, if taken as true would state a claim for negligent misrepresentation. We affirm the trial court's dismissal of Edwards' claim of misrepresentation.

### Securities Fraud

[4] Edwards' counterclaim for securities fraud does not allege a specific violation of the North Carolina Securities Act (Act) other than a conclusory statement that "the above-described conduct constitutes a violation of the North Carolina Securities Act, N.C.G.S. § 78A-1, et seq." From the face of the counterclaim, it is presumed Edwards intended to assign liability for a violation of N.C.G.S.

§ 78A-8(2) and N.C.G.S. § 78A-56(a)(2) which imposes civil liability upon any person who:

> Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading (the purchaser not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known of the untruth or omission . . .

N.C. Gen. Stat. § 78A-56 (a)(2) (2005). Defendant has not made any of the allegations required to sustain a claim for relief under the Act. Specifically, Edwards does not allege the stock he purchased was a "security" by virtue of the terms of the Act, nor is it specifically alleged that BTI sold such a security "by means of any untrue statement of a material fact or any omission to state a material fact," other than Edwards conclusory allegation that "representatives" of BTI provided him with false information. Edwards further fails to allege he did not know, and in the exercise of reasonable care, could not have known of the untruth or omission. Edwards merely offers conclusions of law and attempts to allege the elements of a claim for securities fraud only in general terms, but has not pled facts sufficient to state a claim for securities fraud. Accordingly, we affirm the trial court's dismissal of Edwards' securities fraud claim.

## Unfair and Deceptive Trade Practices Act

[5] To establish a claim for unfair and deceptive trade practices, Edwards must show: (1) that plaintiff committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to defendant. *See Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995). An act or practice is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). An act or practice is deceptive if it "has the capacity or tendency to deceive." *Id.*

Edwards makes no allegation BTI has done anything immoral, oppressive, unscrupulous or substantially injurious to consumers. Edwards alleges BTI's conduct "constitutes unfair and deceptive trade practices," that "such conduct was in and effected [sic] com-

merce," and that Edwards is therefore entitled to recover damages as a result of BTI's alleged conduct. Edwards does not state what alleged conduct of BTI constitutes unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 (Chapter 75). Edwards' claim may relate to either (1) the alleged breach of the Stock Purchase Agreement, or (2) the alleged breach of the "agreement" that plaintiff would defer payment of the final installment payment under the Agreement.

A mere breach of contract, even if intentional, is not an unfair or deceptive act under Chapter 75. *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989); *see also Skinner v. E. F. Hutton & Co., Inc.*, 314 N.C. 267, 275, 333 S.E.2d 236, 241 (1985) (securities transactions are beyond the scope of Chapter 75 in that such transactions are already subject to pervasive and intricate regulation under the North Carolina Securities Act). "It is well recognized . . . that actions for unfair or deceptive trade practices are distinct from actions for breach of contract . . . and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992) (citations omitted). To recover for unfair and deceptive trade practices, a party must show substantial aggravating circumstances attending the breach of contract. *Id.* It is "unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." *Southeastern Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002) (citations and quotations omitted).

Edwards' counterclaim for Unfair and Deceptive Trade Practices states "Edwards is entitled to recover compensatory damages as a result of Timberlake, Inc.'s conduct," but fails to allege any specific conduct by BTI that proximately caused injury to Edwards. Edwards' failure to allege a necessary element defeats his claim for unfair and deceptive trade practices. *See Walker v. Sloan*, 137 N.C. App. 387, 399, 529 S.E.2d 236, 246 (2000) (no recovery where the complaint fails to demonstrate that the act of deception proximately resulted in some adverse impact or actual injury to the plaintiff). We affirm the trial court's dismissal of Edwards' unfair and deceptive trade practices claim.

### Breach of Contract

**[6]** In his counterclaim for breach of contract, Edwards states "by providing inaccurate financial information to Edwards, Timberlake, Inc. breached Article 11, [Section] E of the Agreement. Such breach has damaged Edwards in an amount to be established at trial."

The elements of a claim for breach of contract are (1) the existence of a valid contract and (2) breach of the terms of that contract. *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 792, 561 S.E.2d 905, 909 (2002). Edwards' claim for relief is based on the alleged breach of Article 11, Section E of the Agreement, which sets forth certain representations and warranties of BTI in connection with Edwards' purchase of Riverwood stock. Article IX, section A of the Agreement sets forth a limitation on the survival of such representations and warranties as follows:

> Section A.—Survival of Representations and Warranties. All representations and warranties of the Seller and the Company shall survive the execution, delivery and performance of this Agreement for a period extending two (2) years from the Closing Date.

As the Agreement was executed on April 30, 2001, and Edwards does not allege that any notice whatsoever was provided to BTI within the prescribed two-year limitation period of any breach or nonconformity of any representation or warranty, Edwards' claim is therefore barred by the express terms of the Agreement.

"A legal insufficiency may be due to an absence of law to support a claim of the sort made, absence of fact sufficient to make a good claim, or the disclosure of some fact which will necessarily defeat the claim." *State of Tennessee v. Environmental Management Comm.*, 78 N.C. App. 763, 765, 338 S.E.2d 781, 782 (1986). Furthermore, when a complaint states a valid claim but also discloses an unconditional affirmative defense which defeats the asserted claim, the motion to dismiss will be granted and the action dismissed. *Skinner* at 270, 333 S.E.2d at 238. As Edwards' claim for breach of the Agreement was filed in his counterclaim on 4 September 2003, it is more than 2 years after the parties initially entered into the Agreement (30 April 2001) and therefore, barred by an express limitation contained in the Agreement. Such an insurmountable bar to recovery on the claim requires that the claim be dismissed. "A counterclaim is sufficient to withstand the motion [12(b)(6)] where no insurmountable bar to

recovery on the claim appears on its face." *Chrysler Credit Corp. v. Rebhan*, 66 N.C. App. 255, 257, 311 S.E.2d 606, 608 (1984). At the hearing on the motion to dismiss, counsel for BTI explicitly argued Edwards' alleged claim for breach of the Agreement was barred by the express terms of the Agreement. The trial court properly dismissed the claim.

### Breach of the 18 January 2002 "Agreement"

**[7]** In his final counterclaim, Edwards claims the letter sent by BTI to Edwards 18 January 2002 constitutes an "agreement" that BTI has allegedly breached by filing the underlying action. Edwards alleges that "[he] and Timberlake, Inc. reached an agreement in January 2002 pursuant to which Timberlake, Inc. agreed to delay the payment on the $300,000 Note indefinitely. By filing this suit, Timberlake, Inc. has breached such agreement." The letter states, in pertinent part:

> With respect to our final amount of $300,000 due in February, we are willing to extend the payment thereof indefinitely to allow you ample opportunity to grow the business. Additionally, if you are able to effectively merge all of your business interests into a single corporate organization, we would be willing to "contribute" our remaining 10% interest in Riverwood if that helps you clean up all of the structural and ownership issues you currently face. Please let me know if there is anything further you may need in this regard. Please let me know if the above is agreeable to you.

The 18 January 2002 correspondence was a unilateral offer made to Edwards. Edwards does not allege he accepted the offer, but characterizes the correspondence, standing alone, as an "agreement" between the parties. We find this letter falls short of an agreement because Edwards failed to accept the terms.

At the hearing on BTI's Motion, BTI's counsel explicitly argued the letter was, at most, merely an offer, that Edwards never alleged any consideration for the "agreement." We agree. Here, Edwards has not established the existence of a valid contract or a meeting of the minds with respect to the January 2002 letter. The trial court properly granted plaintiff's motion to dismiss defendant's counterclaim.

### II

**[8]** Defendant next argues the trial court erred by denying his motion for leave to amend his counterclaims.

BOB TIMBERLAKE COLLECTION, INC. v. EDWARDS

[176 N.C. App. 33 (2006)]

Denial of a motion to amend by the trial court will not be disturbed on appeal absent a showing of abuse of discretion. *Nationsbank of North Carolina, N.A. v. Baines*, 116 N.C. App. 263, 268, 447 S.E.2d 812, 815 (1994). "An abuse of discretion occurs when the trial court's ruling 'is so arbitrary that it could not have been the result of a reasoned decision.' " *Chicora Country Club, Inc., v. Town of Erwin*, 128 N.C. App. 101, 109, 493 S.E.2d 797, 802 (1997), *disc. review denied*, 347 N.C. 670, 500 S.E.2d 84 (1998) (citation and quotations omitted). "In the absence of any declared reason for the denial of leave to amend, this Court may examine any apparent reasons for such denial." *United Leasing Corp. v. Miller*, 60 N.C. App. 40, 42-43, 298 S.E.2d 409, 411 (1982), *disc. rev. denied*, 308 N.C. 194, 302 S.E.2d 248 (1983). Some reasons justifying denial of an amendment are (a) undue delay, (b) bad faith, (c) undue prejudice, (d) futility of amendment, and (e) repeated failure to cure defects by previous amendments. *Id.* at 42-43, 298 S.E.2d at 411-12.

The trial court did not state a specific basis for its denial of Edwards' motion for leave to amend his counterclaims. The trial court entered its order denying the motion after "having considered the pleadings, legal briefs and arguments of counsel." The transcript indicates that the trial court specifically reviewed Rule 15 in open court after hearing defense counsel's argument. Pursuant to Rule 15, Edwards would have been able to amend his counterclaim, without leave of court, at any point prior to the responsive pleading being filed. N.C. Gen. Stat. § 1A-1, Rule 15. However, it was only after having been served plaintiff's responsive pleading and having notice of plaintiff's motion to dismiss, that Edwards moved orally to amend his pleadings at the hearing. Such an undue delay of time in making a motion to amend is a valid reason for denying such motion. On this record, we find no abuse of discretion by the trial court in denying Edwards' request for leave to amend his pleadings. This assignment of error is overruled.

Because plaintiff's motion to dismiss defendant's counterclaims was properly granted, and because defendant's motion for leave to amend was properly denied, the judgment of the trial court is affirmed.

Affirmed.

Judges McCULLOUGH and TYSON concur.