Phillips and Jordan, Inc. v. Bostic, 2009 NCBC 13.

STATE OF NORTH CAROLINA

GRAHAM COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
08 CVS 7

PHILLIPS AND JORDAN, INC.,

Plaintiff,

v.

JOSEPH E. BOSTIC, JR., JEFFREY L.
BOSTIC, MELVIN MORRIS, JAMES
BOWMAN, TYLER MORRIS, BOSTIC
DEVELOPMENT, LLC, AND BOSTIC
DEVELOPMENT AT ASHEVILLE, LLC.

Defendants.

ORDER & OPINION

*McKinney and Tallant, P.A. by Eric W. Stiles for Plaintiff.*

*Nexsen Pruet, PLLC by Christine L. Myatt for Defendants Joseph E. Bostic, Jr. and Jeffrey L. Bostic.*

*Ivey, McClellan, Gatton & Talcott, LLP by Edwin R. Gatton for Defendants Melvin Morris and Tyler Morris.*

*Carruthers & Roth, P.A. by Rachel S. Decker and J. Patrick Haywood for Defendant James Bowman.*

Diaz, Judge.

{1}    Before the Court are the following Motions:  (1) Motion of Defendant James Bowman ("Bowman") to Dismiss Plaintiff's Amended Complaint, pursuant to Rules 9(b) and 12(b)(6) of the North Carolina Rules of Civil Procedure; and (2) Motion of Defendants Joseph E. Bostic, Jr., and Jeffrey L. Bostic (collectively the "Bostic Defendants") and Defendants Melvin Morris and Tyler Morris (collectively the "Morris Defendants") to dismiss Plaintiff's Third Claim for Relief alleging

constructive fraud, pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.[1]

{2}    After considering the Amended Complaint, the Motions, the parties' briefs, and the arguments of counsel, the Court **GRANTS** Bowman's Motion to Dismiss Plaintiff's First and Second Claims for Relief alleging fraud and a violation of the North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA"), but said dismissal shall be without prejudice and with leave to re-file.

{3}    The Court otherwise **DENIES** the Motions.

I.

PROCEDURAL BACKGROUND

{4}    Plaintiff Phillips and Jordan, Inc. ("Phillips and Jordan") filed its Complaint on 18 January 2008, asserting claims for fraud and a violation of the UDTPA against all Defendants.

{5}    On 24 March 2008, the Bostic and Morris Defendants answered the Complaint and moved to dismiss, alleging that the trial court lacked subject matter jurisdiction and that the Complaint was subject to dismissal pursuant to Rules 9(b) and 12(b)(6) of the North Carolina Rules of Civil Procedure.

{6}    On 17 July 2008, the trial court entered an order denying those motions.[2]

{7}    On 26 January 2009, Plaintiff filed an Amended Complaint, which asserted an additional claim for constructive fraud against the Bostic and Morris Defendants.

{8}    On 19 February 2009, the Bostic Defendants answered the Amended Complaint and renewed their Motions to Dismiss. The Bostic Defendants filed a supporting brief the next day.

---

[1] The Court refers to Defendants Joseph E. Bostic, Jr., Jeffrey L. Bostic, Melvin Morris, Tyler Morris, and James Bowman, collectively, as the "Individual Defendants."

[2] Thereafter, the case was designated as a mandatory complex business case.

{9}   On 26 February 2009, the Morris Defendants answered the Amended Complaint, and they too renewed their Motions to Dismiss.  The Morris Defendants filed a supporting brief that same day.

{10}  In an amended brief filed on 9 March 2009, the Bostic Defendants conceded that the trial court's 17 July 2008 order foreclosed any further effort by them to seek dismissal of Plaintiff's claims alleging fraud and a violation of the UDTPA. *See generally State v. Woolridge*, 357 N.C. 544, 549, 592 S.E.2d 191, 194 (2003) (stating that "no appeal lies from one Superior Court judge to another . . . and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action").

{11}   The Morris Defendants also have conceded that this Court may not revisit the trial court's earlier rulings.

{12}  On or about 16 March 2009, Bowman filed his Motion to Dismiss the Amended Complaint, accompanied by a brief.

{13}  On 19 March 2009, Plaintiff filed a brief opposing the Motion of the Bostic and Morris Defendants to dismiss the claim for constructive fraud.

{14}  On 2 April 2009, Plaintiff filed a separate brief opposing the Motion to Dismiss filed by Bowman.

{15}  Bowman filed a reply brief on 3 April 2009.

{16}  On 8 May 2009, the Court heard oral argument on the Motions.

II.

THE FACTS[3]

A.

THE PARTIES

{17}  Phillips and Jordan is a North Carolina corporation with its principal place of business in Graham County, North Carolina.  (Am. Compl. ¶ 1.)

---

[3] The facts are taken from the Plaintiffs' Amended Complaint, which the Court accepts as true for purposes of resolving the Motions.

{18}   The Individual Defendants live in either North Carolina or Georgia.  (Am. Compl. ¶¶ 2–6.)

{19}   Defendants Bostic Development, LLC and Bostic Development at Asheville, LLC ("BDA") are North Carolina limited liability companies, and both maintain principal places of business in Greensboro, North Carolina.  (Am. Compl. ¶¶ 7–8.)

{20}   Non-party Bostic Construction, Inc. ("Bostic Construction") is a North Carolina corporation with its principal place of business in Guilford County, North Carolina.  (Am. Compl. ¶ 10.)

B.

THE ALLEGATIONS OF THE AMENDED COMPLAINT

{21}   The Bostic and Morris Defendants were, at all relevant times, officers and directors of Bostic Construction, which did business as a general contractor.  (Am. Compl. ¶ 44.)

{22}   Bostic Construction, however, was but a sham corporation that was dominated and controlled by the Individual Defendants.  (Am. Compl. ¶ 11.)[4]

{23}   The Individual Defendants solicited Plaintiff to sign on as a subcontractor for a real estate development project to be built by Bostic Construction.  (Am. Compl. ¶ 13; Am. Compl., Ex. 1.)

{24}   With respect to Plaintiff's fraud claim, the Amended Complaint alleges that "[o]n or about August 26, 2002 the Defendants using their alter ego, Bostic Construction, Inc., falsely represented to the Plaintiff that Bostic Construction Inc. [sic] had entered into a construction contract pertaining to property represented as being owned by a fictitious entity, Bostic Brothers Development, Inc."  (Am. Compl. ¶ 12.)

{25}   In fact, the true owner of the property was Defendant BDA.  (Am. Compl. ¶ 14.)

---

[4] The Amended Complaint does not explain Bowman's role in the operation or management of Bostic Construction.

{26}   The Individual Defendants made this false representation so as to deprive Plaintiff of payment for its work on the construction project and of its lien rights. (Am. Compl. ¶¶ 15–16, 19–20, 24–25.)[5]

{27}   The Individual Defendants also used a web of sham entities (including the businesses named as Defendants in the Amended Complaint) to misappropriate the construction loan proceeds, thereby depriving Plaintiff of payment for its work on the construction project. (Am. Compl. ¶¶ 9, 11, 21–23.)

{28}   Among other things, the Individual Defendants made preferential payments to other creditors and diverted the loan proceeds to further their own personal interests. (Am. Compl. ¶¶ 47–51.)

{29}   When the Individual Defendants took such action, Bostic Construction's financial circumstances were such that the company was effectively undergoing a winding-up or dissolution. (Am. Compl. ¶¶ 53–58.)

## C.

## BOSTIC CONSTRUCTION BANKRUPCTY PROCEEDING

{30}   The Court takes judicial notice that on or about 17 January 2005, an involuntary bankruptcy petition under Chapter 7 of the Bankruptcy Code was filed against Bostic Construction. (Mot. Dismiss & Answer Bostic Defs., Ex. B.)

{31}   The Court also takes judicial notice of an order in the Bostic Construction bankruptcy proceeding approving a settlement agreement between the Chapter 7 Trustee, the Bostic Defendants, and Melvin Morris related to potential claims of Bostic Construction for preferential payments under the Bankruptcy Code and for alleged breaches of the fiduciary duties these Defendants purportedly owed to

---

[5] The Bostic and Morris Defendants (but not Bowman) dispute that Plaintiff relied on, or was deceived by, this purported misrepresentation, contending that Plaintiff, in fact, filed a Claim of Lien that correctly identified BDA as the owner of the property. The Court declines to consider this contention because it is a backdoor attempt by the Bostic and Morris Defendants to re-litigate the legal sufficiency of the fraud and UDTPA claims in the face of a prior court order denying their Rule 12(b)(6) motion to dismiss. That said, given that the evidence in the Court file tends to show that Plaintiff's Claim of Lien, in fact, listed the correct owner of the property (*see* Mot. Dismiss & Answer Bostic Defs., Ex. C), Plaintiff and its counsel should consider carefully their obligations under Rule 11 of the North Carolina Rules of Civil Procedure before re-filing their common law fraud and UDTPA claims against Bowman or pursuing the fraud claim against the remaining Defendants.

Bostic Construction in their capacities as officers and directors. (Mot. Dismiss & Answer Bostic Defs., Ex. A.)

## III.
## PRINCIPLES OF LAW
### A.
### RULE 12(b)(6)

{32} The essential question on a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure is "'whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.'" *Craven v. Cope*, 188 N.C. App. 814, 816, 656 S.E.2d 729, 731–32 (2008) (*quoting Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 480, 593 S.E.2d 595, 598 (2004)).

{33} To that end, "'[t]he complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief.'" *Id.* at 816, 656 S.E.2d at 731–32 (italicized in original) (*quoting Hunter*, 162 N.C. App. at 480, 593 S.E.2d at 598). Nevertheless,

> [d]ismissal under Rule 12(b)(6) is proper when one or more of the following three conditions is satisfied: (1) when on its face the complaint reveals no law supports plaintiff's claim; (2) when on its face the complaint reveals the absence of fact sufficient to make a good claim; and (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim.

*Johnson v. Bollinger*, 86 N.C. App. 1, 4, 356 S.E.2d 378, 380 (1987) (*citing Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985)).

### B.
### FRAUD

{34} Rule 9(b) of the North Carolina Rules of Civil Procedure requires that a claim for fraud be pled with particularity. *See* N.C. R. Civ. P. 9(b) (2007).

{35}   "'Mere generalities and conclusory allegations of fraud will not suffice.'" *Sharp v. Teague*, 113 N.C. App. 589, 597, 439 S.E.2d 792, 797 (1994) (*quoting Moore v. Wachovia Bank & Trust Co.*, 30 N.C. App. 390, 391, 226 S.E.2d 833, 835 (1976)).

{36}   Rather, to satisfy the requirements of the rule, a pleader must allege the "'time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations.'" *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 39, 626 S.E.2d 315, 321 (2006) (*quoting Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981)).

## C.

## CONSTRUCTIVE FRAUD

{37}   To make out a claim for constructive fraud, a plaintiff must show (1) a relationship of trust and confidence akin to that of a fiduciary, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that the plaintiff was injured as a result. *See Sterner v. Penn*, 159 N.C. App. 626, 631, 583 S.E.2d 670, 674 (2003).

{38}   Constructive fraud differs from actual fraud in that "it is based on a confidential relationship rather than a specific misrepresentation." *Terry*, 302 N.C. at 85, 273 S.E.2d at 678–79.

{39}   The pleading requirements for this tort may be met by alleging "facts and circumstances (1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950).

{40}   Constructive fraud by a director of a corporation generally arises from the director's breach of a fiduciary duty. As a general rule, however, directors owe fiduciary duties to the corporation, and not to any individual creditor. *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 29–30, 560 S.E.2d 817, 824 (2002).

{41}   Thus, in most instances where a director breaches a fiduciary duty, the action is properly maintained by the corporation rather than an individual creditor.

*Id.* at 26, 560 S.E.2d at 822 (*citing Underwood v. Stafford*, 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967)).

{42}  In certain circumstances, however, corporate directors may owe a fiduciary duty to creditors of the corporation.  The circumstances under which a director's fiduciary obligations extend to creditors have been limited to those situations "'amounting to a 'winding up' or dissolution of the corporation.'"  *Id.* at 31, 560 S.E.2d at 825 (*quoting Whitley v. Carolina Clinic, Inc.*, 118 N.C. App. 523, 528, 455 S.E.2d 896, 900 (1995)).

{43}  Where a director owes a fiduciary duty to a creditor of the corporation, a breach occurs if the director takes advantage of his position for his own benefit at the expense of the creditor.  *Id.* at 30, 560 S.E.2d at 824.

{44}  Moreover, "once the fiduciary duty arises, a director must treat all creditors of the same class equally by making any payments to such creditors on a pro rata basis."  *Id.* at 33, 560 S.E.2d at 827 (*citing Bassett v. Cooperage Co.*, 188 N.C. 511, 512, 125 S.E. 14, 14 (1924)).

{45}  Where a creditor can show constructive fraud by a director at a time when the corporation "is in declining circumstances and verging on insolvency," *id.* at 30, 560 S.E.2d at 825 (*quoting Wall v. Rothrock*, 171 N.C. 388, 391, 88 S.E. 633, 635 (1916)), or "where such facts establish circumstances that amount 'practically to a dissolution,'" *id.* (*quoting Bassett*, 188 N.C. at 512, 125 S.E. at 14), the claim is one that "belongs to the creditor and not the corporation," *id.* at 26, 560 S.E.2d at 823 (*citing Mills Co. v. Earle*, 233 N.C. 74, 62 S.E.2d 492 (1950)).

IV.

ANALYSIS

A.

HAS PLAINTIFF STATED A CLAIM FOR FRAUD?

{46}  Bowman asserts that Plaintiff's fraud claim should be dismissed pursuant to Rule 9(b) of the North Carolina Rules of Civil Procedure because the pleading

lumps all of the individual Defendants together without identifying the specific person who made the alleged misrepresentations.

{47} Bowman further contends that Plaintiff's claim alleging a violation of the UDTPA should also be dismissed because the predicate tort that forms the basis of the claim (in this case fraud) is deficient as a matter of law.

{48} The Court agrees.

{49} To survive a motion to dismiss for failure to plead fraud with the particularity required by Rule 9(b), the pleader must, at a minimum, allege the time, place and content of the fraudulent representation, the identity of the person making the representation, and what was obtained as a result of the fraudulent acts or representations. *See Bob Timberlake Collection, Inc.*, 176 N.C. App. at 39, 626 S.E.2d at 321 (*quoting Terry*, 302 N.C. at 85, 273 S.E.2d at 678).

{50} Although Plaintiff's Amended Complaint does not allege so expressly, Plaintiff's theory of liability as to fraud appears to be either (1) that the Individual Defendants conspired to defraud it, or (2) that they are liable to Plaintiff on alter ego or piercing the corporate veil principles.

{51} In that regard, "North Carolina law does not recognize a claim merely for civil conspiracy, but does recognize a claim for damages caused by acts carried out pursuant to a conspiracy." *Ivey v. McDaniel (In re EBW Laser, Inc.)*, Case No. 05-10220C-7G, Case No. 05-10221C-7G, Adversary No. 07-2004, 2009 Bankr. LEXIS 70, at *30 (Bankr. M.D.N.C. Jan. 15, 2009).

{52} Similarly, an alter ego claim is not in itself a claim for substantive relief, but rather a means to "'disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation.'" *Id.* at *15–16 (*quoting Hennessey's Tavern, Inc. v. Am. Air Filter Co., Inc.*, 25 Cal. Rptr. 859, 863 (Cal. Ct. App. 1988)).

{53} Regardless of Plaintiff's theory, however, North Carolina law does not excuse Rule 9(b)'s pleading requirements merely because a plaintiff claims he was defrauded by a group or association of persons.

{54}  For example, in *Coley v. North Carolina National Bank*, 41 N.C. App. 121, 254 S.E.2d 217 (1979), the plaintiffs alleged that the defendants (which included corporate entities and individuals), collectively misrepresented the performance of a material condition related to a real estate transaction.  41 N.C. App. at 123–24, 254 S.E.2d at 217–19.

{55}  The complaint, however, contained "no facts whatsoever setting forth the time, place, or specific individuals who purportedly made the misrepresentations to the plaintiffs."  *Id.* at 125, 254 S.E.2d at 219–220.

{56}  The North Carolina Court of Appeals affirmed the trial court's dismissal of the fraud claim for failing to comply with Rule 9(b), holding that a plaintiff "*must identify the particular individuals* who dealt with him when he alleges that he was defrauded by a group or association of persons."  *Id.* at 125, 254 S.E.2d at 219 (*citing Trussell v. United Underwriters, Ltd.*, 228 F. Supp. 757, 774–75 (D. Colo. 1964)) (emphasis added).  In particular, even if a plaintiff "may not be privy to the workings of a group of defendants who have acted in concert to defraud him, . . . [it] can at least identify the particular defendants who allegedly dealt directly with him," and it can also "designate the occasions on which affirmative misstatements were made to [it]—and by whom[.]" *Trussell*, 228 F. Supp. at 774.

{57}  Plaintiff's pleading in this case fails to satisfy the requirements of Rule 9(b).

{58}  While Plaintiff's Amended Complaint alleges that the Individual Defendants conspired to defraud it by misrepresenting the true owner of the property for which Plaintiff had been retained to provide construction materials and services, Plaintiff fails to identify who made the misrepresentation.  Plaintiff also fails to identify the place where the purportedly fraudulent statement was made.

{59}  Plaintiff does allege that the misrepresentation was made on or about 26 August 2002.  (Am. Compl. ¶ 12.)  In that regard, the Court notes that attached to the Amended Complaint is Exhibit 1, which is a copy of a construction contract purportedly executed by Plaintiff and Bostic Construction on 26 August 2002.  The

contract does, in fact, identify the owner of the property as Bostic Brothers Development, Inc., and not BDA.

{60} Thus, if Plaintiff contends this contract is the source of the representation, the speaker in question would be the person who signed it on behalf of Bostic Construction.[6]

{61} Regardless, what is clear is that the allegations of fraud—at least in their present form—do not satisfy the pleading requirements of Rule 9(b).

{62} Accordingly, the Court **GRANTS** Bowman's Motion to Dismiss the fraud claim.[7]

{63} Additionally, because Plaintiffs' UDTPA claim as to Bowman springs from the same allegations supporting Plaintiff's fraud claim, it too must be dismissed. *See Childers v. Hayes*, 77 N.C. App. 792, 796, 336 S.E.2d 146, 149 (1985) (affirming the trial court's dismissal of the plaintiff's UDTPA claim because the plaintiff's fraud and negligence claims, on which the UDTPA claim was based, had been properly dismissed).

{64} Plaintiff's fraud and UDTPA claims, however, are dismissed without prejudice and with leave to re-file within twenty (20) days of entry of this Order.

B.

DOES PLAINTIFF HAVE STANDING TO SUE FOR
CONSTRUCTIVE FRAUD?

{65} The Bostic and Morris Defendants contend that Plaintiff lacks standing to assert a claim for constructive fraud against them in their capacity as directors of Bostic Construction because: (1) the claim (if any) belongs to Bostic Construction; and (2) the claim is barred because it was settled as part of Bostic Construction's Chapter 7 bankruptcy proceeding.

{66} The Court disagrees.

---

[6] That person, however, is not named as a defendant in this action.
[7] Bowman also contends that Plaintiff's fraud claim is deficient because it fails to allege that Bowman knew that the purported representation was false. (Br. Supp. Bowman's Mot. Dismiss 6–7.) To the contrary, the Amended Complaint alleges expressly that the "Individual Defendants *knowingly* and willfully made false representations." (Am. Compl. ¶ 14 (emphasis added).)

{67}  As to the first contention, Plaintiff's Amended Complaint alleges specifically that the Bostic and Morris Defendants, while serving as officers and directors of Bostic Construction, caused the corporation to make preferential payments to creditors other than Plaintiff and also diverted for their own purposes loan funds that otherwise would have been available to pay Plaintiff for its work on the construction project.  (Am. Compl. ¶¶ 47–50.)

{68}  Plaintiff further alleges that these Defendants took such actions at a time when Bostic Construction was either insolvent or nearly insolvent and under circumstances amounting to a winding up or dissolution of the corporation.  (Am. Compl. ¶¶ 53–57.)

{69}  The Court holds, consistent with *Keener*, that Plaintiff's claim for constructive fraud is "founded on injuries peculiar or personal to [Plaintiff as an individual creditor], and, therefore, is a claim that belongs to [Plaintiff] and not the corporation."  149 N.C. App. at 26–27, 560 S.E. 2d at 823.

{70}  The Court also holds that the Chapter 7 bankruptcy proceeding involving Bostic Corporation does not bar Plaintiff's claim.

{71}  It is true that "[w]hen a corporation enters bankruptcy, any legal claims that could be maintained by the corporation against other parties become part of the bankruptcy estate, . . . and claims that are part of the bankruptcy estate may only be brought by the trustee in the bankruptcy proceeding."  *Id.* at 25, 560 S.E.2d at 822.

{72}  Under such circumstances, there is also no doubt that a state trial court would lack subject matter jurisdiction to hear the claim.  *See id.* at 26, 560 S.E.2d at 822 (*citing Tart v. Prescott's Pharmacies, Inc.*, 118 N.C. App. 516, 521, 456 S.E.2d 121, 125 (1995)).

{73}  But where, as here, the claim arises from a purported breach of a fiduciary duty owed by a corporate director to a creditor, and where the claim, therefore, properly belongs to the creditor and not the corporation, "it is not part of the bankruptcy estate, and the trustee in bankruptcy does not have authority to bring [or settle the] claim."  *Id.* at 27, 560 S.E.2d at 823.

{74}   *TUG Liquidation, LLC v. Atwood (In re BuildNet, Inc.)*, Case Nos. 01-82293 through 01-82299, Adversary Proceeding 04-09003, 2004 Bankr. LEXIS 2383 (Bankr. M.D.N.C. June 16, 2004), relied on by Defendants, is not to the contrary.

{75}   There, the bankruptcy court held that claims against corporate directors alleging a breach of fiduciary duty based on corporate waste and deepening insolvency should be dismissed because they were derivative of an injury to the corporation, and not the result of a direct injury sustained by the plaintiff-creditor. 2004 Bankr. LEXIS 2383, at *19–22.

{76}   The bankruptcy court, however, denied the defendants' motion to dismiss the plaintiff-creditor's separate claim for constructive fraud, based on the holding in *Keener.* *Id.* at *22–23.

{77}   In this case, the Chapter 7 proceeding resolved only Bostic Corporation's claims against some of the Individual Defendants.  (*See* Mot. Dismiss & Answer Bostic Defs., Ex. A.)

{78}   The Court has already determined, however, that Plaintiff's claim for constructive fraud alleges a breach of a fiduciary duty owed directly to Plaintiff as a creditor.  Because this claim never belonged to Bostic Construction, it was never part of the bankruptcy estate, and thus, there is no bar to Plaintiff prosecuting the claim in this Court.

{79}   Finally, the Bostic and Morris Defendants also contend that allowing Plaintiff's claim to proceed may negatively impact the Bostic Construction bankruptcy case.

{80}   The Court, however, is not persuaded.  It appears that the Chapter 7 Trustee has settled whatever claims he believed the debtor corporation could lodge against the Individual Defendants.  As a result, whatever recovery inures to Plaintiff from pursuing what the Court concludes are direct claims against the Individual Defendants will have no impact on the debtor's bankruptcy estate.

{81}   Accordingly, the Court **DENIES** the Motions to Dismiss Plaintiff's claim for constructive fraud.

V.

CONCLUSION

{82}    As to Defendant Bowman, the Court **DISMISSES** without prejudice Plaintiff's First and Second Claims for Relief alleging fraud and a violation of the UDTPA.

{83}    Plaintiff shall have twenty (20) days from the date of entry of this Order to re-file its claims against Bowman.

{84}    In all other respects, the Motions to Dismiss are **DENIED**.


**SO ORDERED**, this the 2nd day of June, 2009.